[No. 13921. Department Two. April 6, 1917.]

CORA S. ENNIS, *Respondent*, v. RUSH BANKS et, al., *Appellants*.[1]

APPEAL—DECISION—LAW OF THE CASE. Where the evidence upon the second trial is substantially the same as upon the first trial and it was then held sufficient to go to the jury, the decision on the first appeal becomes the law of the case and is conclusive.

PHYSICIANS AND SURGEONS—MALPRACTICE—INSTRUCTIONS—ISSUES. In an action for malpractice in negligently causing the death of a patient, in which the only negligence complained of was the administering of milk toast and soft poached eggs, it is error to give instructions upon general negligence which would lead the jury to believe that they might consider any act of negligence or general acts outside the issues of the case.

SAME. In such a case, it is misleading to give an instruction that the jury could consider the advanced state of the profession at that time, where there was no evidence in the case that there was any advanced state of the profession at that time upon the subject in question.

SAME—MALPRACTICE—INSTRUCTIONS. In an action for malpractice against an allopathic doctor in which a physician of the homeopathic school of medicine testified against him, it is misleading and error to instruct the jury that, if they should find that the defendant did not follow the established practice in a case as recognized by doctors and followed by other surgeons in prescribing in that locality, contributing or hastening the death of the patient, then the defendant would be liable.

SAME—MALPRACTICE — INSTRUCTIONS — ISSUES. In an action for malpractice in causing the death of a patient due to improper treatment, it is error to give an instruction attributing the cause of the death to accident and upon the presumption following, where no accident was shown.

[1]Reported in 164 Pac. 58.

APPEAL—REVIEW—INSTRUCTIONS—EXCEPTIONS. In the absence of an exception to an instruction, error therein will not be considered on appeal.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered June 14, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for malpractice. Reversed.

*George C. Congdon* and *Herman Allen*, for appellants.

*C. D. Cunningham* and *Wedmark & Grimm*, for respondent.

MOUNT, J.—This is the second appeal in this case. When it was here before, on appeal from a judgment for fifteen hundred dollars in favor of the plaintiff, it was reversed because of the admission of certain evidence and the giving of certain instructions to the jury. It was remanded for a new trial. *Ennis v. Banks*, 88 Wash. 237, 152 Pac. 1037. The issue in the case was whether the appellant was guilty of malpractice in giving a diet of poached egg and toasted bread to a typhoid fever patient. Upon this issue, the case was retried to the court and a jury, and resulted in a verdict and judgment against the defendants for nine thousand dollars. The defendants have appealed from that judgment.

The facts are substantially as follows: The defendant Rush Banks is a physician, practicing his profession in the city of Centralia. On December 22, 1914, he was called to the home of Donald Ennis, whom he found was suffering with typhoid fever. On the next day, Mr. Ennis was removed to a hospital, which was being conducted by Dr. Banks. From that time on until January 14, 1915, Mr. Ennis was treated by Dr. Banks. Mr. Ennis was attended by a nurse who cared for him constantly during that time. From the time Mr. Ennis was taken to the hospital until the 14th day of January, 1915, he was a very sick man. Gas would accumulate, almost constantly, in his stomach and bowels, and on the 11th day of January, Dr. Banks called in consultation two other doctors. It was then concluded

that an operation was necessary in order to remove the gas, but Mrs. Ennis, the plaintiff in this case, and the patient's mother would not consent to the operation. The patient, before this time, had been fed upon a milk diet, which apparently did not agree with him, and subsequently had been fed upon beef broth. This latter diet seemed to agree with him better than the milk diet. On the 12th and 13th of January, the patient seemed to be somewhat improved. On the 14th, the doctor caused to be prepared a slice of bread, about three inches square, from which the crust was removed, and which was toasted, soaked in boiling milk until the toast was soft; and an egg was broken in some hot water and allowed to coagulate. This egg was then placed upon the soft toast and this toast and egg was given to the patient. The patient ate about two-thirds of the egg and toast. About three hours thereafter, an eggnog was prepared and given to the patient. When the eggnog was administered, the patient vomited the eggnog and the egg and toast which had been administered three hours before. The patient, at that time, seemed to be worse. Mrs. Ennis then became dissatisfied with the treatment of Dr. Banks and ordered the patient removed to her home, about a block away. The patient was taken from his bed at the hospital, carried out of the room, down a flight of stairs to the street, placed on a stretcher, and taken home. Another doctor, practicing the homeopathic method of medicine, was called, and treated the patient two days, when he died, on January 16th, 1915.

Afterwards, this action was brought. The basis of the action is malpractice, alleged to be the cause of the death of Donald Ennis, by reason of the feeding of the poached egg and toast.

The appellants very forcibly argue that the trial court should have granted a judgment notwithstanding the verdict, for the reason that the verdict of the jury is based upon speculation and conjecture and that, if the appellant Dr. Banks made any mistake, it was an error of judgment, and not a

negligent act.    But for the fact that these same questions were presented upon the other appeal, and the case was remanded for a new trial, we are satisfied that there is merit in these points.

The evidence very conclusively shows that the patient, during the time he was under the charge of Dr. Banks, was a very sick man.    Whether the feeding of this toast and egg was the primary cause of his death, is open at least to very serious doubt.    The evidence shows that Mr. Ennis' death may have been due to one of three causes: First, the disease itself; second, the carrying of the patient from the hospital to another place; and, third, the change of diet.    But, under the rule established when the case was here before, we are constrained to hold it was for the jury to determine which of these causes resulted in his death, and whether the doctor, in administering the toast and egg, as hereinbefore stated, was guilty of malpractice.    The evidence upon this trial was substantially the same as upon the other trial, and upon the other appeal we used this language:

"The appellant urges that the trial court should have granted his motion for a nonsuit at the close of the respondent's case.    There was, however, evidence that the toast and egg diet was, under the circumstances, an improper treatment.    Dr. Blair so testified.    This was evidence that the specific act alleged was negligent, and this evidence should have been submitted to the jury under proper instructions."

So it is plain that the facts shown upon this trial were sufficient to take the case to the jury.    In other words, that statement of the rule became the law of the case.    *Patterson v. Seattle, Renton & Southern R. Co.*, 64 Wash. 370, 116 Pac. 1089, 35 L. R. A (N. S.) 660; *Provine v. Seattle*, 70 Wash. 326, 126 Pac. 927; *Hendrickson v. Simpson Logging Co.*, 77 Wash. 276, 137 Pac. 444; *Chehalis v. Cory*, 64 Wash. 367, 116 Pac. 875.

The appellants also argue that the instructions were erroneous.    The court, after defining the issues, instructed the jury as follows:

"(4)   (With the issues thus made up I instruct you that before the plaintiff can recover in this case she must establish by a preponderance of the evidence that the defendant, Rush Banks was either guilty of negligence in the treatment of the case or that he did not exercise ordinary skill and competence in the treatment thereof and that such negligent acts or omissions or said want of proper and ordinary skill or both, were the proximate cause of the death of said Donald Ennis.)

"(5)   The court instructs you that the implied contract of the defendant when he assumed charge of the treatment of plaintiff's injuries was that he possessed and would employ in the treatment of the case, such reasonable skill and diligence as were ordinarily exercised in his profession at and in localities similar to that in which he practiced, by the members as a body; that is, the average of the reasonable skill and diligence ordinarily exercised by the profession at the time and in places similar to Centralia. *Regard is to be had in determining this ordinary skill and diligence to the improvement and advanced state of the profession at the time the case was treated.*

"(6)   I charge you, members of the jury, that when the defendant, Rush Banks undertook as a physician and surgeon to treat and care for Donald Ennis, the deceased husband of the plaintiff, the law required of him no more than that he should exercise that degree of knowledge, skill and care which physicians and surgeons practicing in this vicinity and similar localities ordinarily possess, (and if you should find from the evidence that in his treatment of the said Donald Ennis, the defendant, Rush Banks, did not use and exercise as high a degree of knowledge, skill and care as is ordinarily used and possessed by physicians and surgeons practicing in this and similar localities and as a result thereof the said Donald Ennis was injured and from those injuries he died, your verdict must be for the plaintiff.)

"(7)   While it is true that a physician is not liable for what is commonly called a mistake in judgment or a mistake in diagnosis, (yet, if you should find from a fair preponderance of the evidence in this case that the defendant, Rush Banks, failed to exercise his best judgment, that is, the judgment which a physician of ordinary care, skill and intelligence in the same or similar localities would have used under

like circumstances, then I charge you that the defendant cannot escape his negligent acts because of his failure to use his best judgment and if you should find that the act or acts of the said defendant Rush Banks when he failed to use his best judgment, as I have hereinabove instructed you, approximately contributed to the death of Donald Ennis, then your verdict must be for the plaintiff.")

The parts of these instructions which we have indicated by parentheses should not have been given, because they are instructions upon general negligence, not within the issues of the case, and, in effect, tell the jury that, for want of ordinary care generally, the doctor is liable. When the case was tried before, the court admitted evidence of other acts which were claimed to be negligent, and which acts were not within the issues, and for that reason the case was reversed. The act constituting malpractice complained of here, and the only act complained of, was the administering of milk toast and soft poached egg. No other negligence is alleged. Under these instructions, which we have quoted above, the jury were led to believe that they might consider any acts of negligence, or general acts, and make up their verdict outside the issues of the case.

Instruction No. 5, above quoted, is subject to another objection, namely, that the part in italics, to the effect that in determining ordinary skill and diligence, the advanced state of the profession at that time might be considered. There was no evidence in the case that there was any advanced state of the profession at that time and of course the jury were not authorized to take that fact into consideration in determining want of care on the part of the physician. That part of the instruction was misleading.

The court, at instructions Nos. 10 and 11, used the following language:

"(10)  You are instructed if you should find from a fair preponderance of the evidence that the defendant, Rush Banks, did not follow such established practice in the case and treatment of the deceased, Donald Ennis, as is recog-

nized, adopted and followed by other physicians and surgeons in good standing, practicing in this and similar localities, and as a result thereof the said Rush Banks contributed or hastened the death of Donald Ennis, then I charge you that he is liable to the plaintiff in damages.

"(11)   In connection with the last mentioned instruction I desire to charge you that the rule of law is in such cases as this, as follows:

" 'When a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption in the absence of showing of other cause that the one known was the operative agency in bringing about the result.' "

These instructions were clearly erroneous.   The evidence in this case shows that Dr. Banks was known as an allopathic doctor.   One of the doctors who testified that the treatment given by Dr. Banks was improper was a physician of the homeopathic school of medicine, and admitted that his system of treatment was different from that of Dr. Banks, or the allopathic school.

The first of these last quoted instructions told the jury, in substance, that, if Dr. Banks did not follow the practice recognized by other physicians in good standing in that locality, and as a result thereof, hastened the death of Donald Ennis, the respondent was entitled to recover, which, of course, is not the law.   Each school of medicine is entitled to practice in its own way, and because one does not use the methods of the other is no reason for holding the one for malpractice. In the case of *Dahl v. Wagner*, 87 Wash. 492, 151 Pac. 1079, we said:

"It has been the uniform holding of this court that where doctors of equal skill and learning, being in no way impeached or discredited, disagree in opinion upon a given state of facts, that the courts cannot hold a defendant in a malpractice suit to the theory of the one to the exclusion of the other.   This is the logic of *Brydges v. Cunningham,* 69 Wash. 8, 124 Pac. 131.   It is enough if the treatment employed 'have the approval of at least a respectable minority

of the medical profession who recognized it as a proper method of treatment.' *Lorenz v. Booth*, 84 Wash. 550, 147 Pac. 31. The reason is obvious. A man who is called upon to exercise professional judgment is bound only to the exercise of reasonable skill and learning and diligence. 'He is not liable for mistakes if he uses the method recognized and approved by those reasonably skilled in the profession.' " [Citing authorities].

So, it is apparent that this instruction was erroneous and misleading.

Instruction No. 11 to the effect that, when a cause is shown that might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption, in the absence of showing of other cause, that the one shown was the operative agency in bringing about the result, had no place in this case. There was no accident here. Mr. Ennis either died from natural causes, or from being removed from the hospital, or he died from malpractice. There was no occasion, therefore, for giving this instruction.

The appellants contend that Instruction No. 20, with reference to the effect to be given to the testimony upon hypothetical questions, was erroneous. We are satisfied that the instruction was not as complete as it should be, but since no exception was taken to the instruction, we shall not consider it further.

The instructions, taken as a whole, were voluminous. There were twenty-four instructions, covering eleven pages of typewritten matter. They were long and cumbersome and had a tendency more to mislead than to enlighten the jury. The issue in the case was a simple one. It ought to have been covered in, at most, a half dozen instructions, to the points that unless the jury could say that the patient died solely from the effect of the soft toast and egg which was administered to him, and not from the disease, or from being carried from the hospital, at the stage of the disease he was then in, there could be no recovery; that there could be re-

covery only in case the giving of the toast and egg was the prime cause of the patient's death, and the doctor knew, or should have known, such result would follow. Before the respondent would be entitled to recover for malpractice, the jury ought to have been told that they must find that Dr. Banks did not use his judgment in administering the egg and toast, under the circumstances, but was guilty of malpractice in administering such toast and egg at that time. A few simple instructions upon these questions, in addition to those ordinarily given, were sufficient for the jury.

The appellants further argue that the court erred in not granting a new trial because of misconduct of the jury in arriving at their verdict, for the reason that the result of the verdict was a quotient verdict and not based upon the judgment of the jurors; and for the further reason that the verdict and judgment are excessive. There is merit in both these contentions, but in view of the fact that a new trial must be granted for errors in the instructions, we shall not discuss them.

The judgment is reversed, and the cause remanded for a new trial.

HOLCOMB and PARKER, JJ., concur.

ELLIS, C. J., concurs in the result.