### DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

[No. 17931. Department One. October 19, 1923.]

## EFFIE WILCOX, *Respondent*, v. O. G. CARROLL, *Appellant*.[1]

PHYSICIANS AND SURGEONS (10)—ACTIONS FOR MALPRACTICE—DE-FENSES. A person employing a drugless healer, knowing that he will not operate or advise an operation, cannot complain because he did not perform an operation.

SAME (11)—MALPRACTICE—EVIDENCE—QUESTION FOR JURY—IM-PROPER DIAGNOSIS AND TREATMENT. A wrong diagnosis by a drugless healer, followed by maltreatment according to the evidence of his own experts, is actionable; and there is a question for the jury as to actionable negligence where a child, suffering from acute ap-pendicitis, was given wrongful treatment for nine days until it was in a dying condition, when the healer abandoned the case.

SAME (10½)—MALPRACTICE—EVIDENCE—ADMISSIBILITY—EXPERTS OF OTHER SCHOOLS. Where there was evidence of the negligence of a drugless healer in failing to properly diagnose a case of appendicitis, and in giving wrong treatment for nine days, it is not error to receive the evidence of regular physicians as to what they found upon performing an operation, or as to their method of diagnosis.

SAME (12)—MALPRACTICE—INSTRUCTIONS—INCONSISTENCY. Where instructions as to a wrongful diagnosis by a drugless healer first correctly states the general rule, followed by an explicit and perfect statement as to the degree of care required of practitioners of differ-ent schools, a technical inconsistency in some of the instructions in failing to state that defendant would not be liable unless his wrong diagnosis was followed by wrong treatment, or in failing to make the test by the particular school of thought, is not fatally er-roneous where those matters were covered by other instructions.

[1]Reported in 219 Pac. 34.

SAME (12)—INSTRUCTIONS—TESTIMONY OF MEDICAL EXPERTS.  A correct abstract instruction as to the value and weight to be given to opinion evidence by physicians testifying as experts is proper in a malpractice case, where all the experts for appellant admitted that the specific acts of treatment were wrong, but gave as their conclusion that the treatment was correct.

Appeal from a judgment of the superior court for Spokane county, Hill, J., entered January 8, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death, after a trial on the merits.  Affirmed.

*W. W. Zent* and *Ferris & Ferris,* for appellant.

*Don F. Kizer,* for respondent.

HOLCOMB, J.—In this action for damages against appellant on account of the death of a minor son of respondent, the amended complaint alleged that death was caused by the negligence of appellant, a drugless physician, in failing to properly diagnose the disease from which the child was suffering, and in failing to give the child proper treatment.  A trial to the court and a jury resulted in a verdict and judgment in the sum of $2,500.  A motion for a directed verdict had been timely made and denied, and motions were unsuccessfully made for judgment *non obstante veredicto,* and for a new trial.

Appealing, appellant strenuously contends that the trial court admitted such evidence and so submitted the case to the jury upon instructions that the jury were allowed to judge of appellant's capacity or incapacity to diagnose the case, and his negligence in treating the case, upon the testimony of physicians of other schools.  Nine errors are relied upon for a reversal upon his theory of the case.

Appellant is what is called a sanipractor physician, not licensed as a full sanipractor, but licensed to use

the methods of treating disease known as hydro-therapy, diatetics, electrotherapy, and psycotherapy. Such practitioners are not permitted to use drugs such as physicians of the regular schools use, nor to perform operations.

The case made by respondent to go to the jury was substantially as follows:

The eight-year-old son of respondent was taken ill on Wednesday, December 28, 1921, complaining of stomach ache. He was confined to his bed on the next day and on the 30th. On that day, he displayed such symptoms of appendicitis as to make the mother fearful that he was suffering from that disease, and that he should be put in the care of a physician. Accordingly, on the 30th, having faith in appellant as a drugless physician, she telephoned him, described the symptoms to him, and expressed the fear that the child had appendicitis. Appellant told her that the child could not possibly have appendicitis because the appendix did not form until a child was at least ten years of age. On that day she took the child to appellant's office, again explained the symptoms to him, with the statement that, if the child had appendicitis, she wanted an operation if appellant thought one necessary. She was again assured by appellant that the disease could not be appendicitis. She was also told by appellant that the child was suffering from either spinal meningitis or from infantile paralysis; and that, if a regular physician had been called on the case he would inject a serum into the spine of the child which would make him a cripple for life. He asked respondent if she desired him to give the child treatment, and because, as she said, she thought appellant could do as well as anyone if the child did not have appendicitis, she employed him to treat the child.

The next day, Saturday, appellant gave the child another treatment at his office, but did not express an opinion as to what disease the child was suffering from. On Sunday he again treated the child at his office, and then diagnosed the child's trouble as being inflammation of the spine and congestion of the bowels, and continued the same treatment he had been giving theretofore. He gave the child daily treatment until Friday, January 6, 1922. The treatments in general consisted of electric massage of the spine, alternate applications of hot and cold compresses to the abdomen and back, sitz baths and internal baths. The child was brought to appellant's office by automobile for each treatment.

From the first day appellant treated the child—that is, on Friday the 30th, until the following Wednesday —by direction of appellant, respondent gave the child no food. On the following Wednesday, she told appellant that the child asked for food and, she testified, appellant told her to give the child a little beef broth and a little diluted grape juice, which she said she gave according to directions that night and the next day.

It seems that the child grew worse, or at least grew no better under the treatment; and on Friday, January 6, respondent became so alarmed at the child's condition that she called appellant to her home. He went about 2:30 p. m., and gave the child a treatment there consisting of wrapping him in a wet sheet. After remaining a short time, he left, leaving instructions for the mother to call him at 5:30 p. m. The child's temperature dropped until it had become below normal—in fact about 94 degrees—when respondent became so alarmed that she telephoned appellant before the prescribed time, telling him of the temperature. Appellant then told her that there was something about the condition of the child that he did not understand; for her

to take the child out of the wet sheet and call a regular physician, but not to let the physician know that appellant had been treating the child.

Respondent thereupon called Dr. R. E. Ahlquist, a regular physician and surgeon, who diagnosed the disease as acute appendicitis where the appendix had already bursted and peritonitis had set in. Dr. Ahlquist found the child in practically a dying condition when he was called in, but believed that the child would have more chances of surviving with an operation than without. He therefore operated on the child that night; and upon the abdomen being opened, at least a pint of pus shot up out of the abdominal cavity and the appendix was found to be ruptured and gangrenous. The child died the next morning.

There is a conflict in the evidence between respondent and appellant as to whether appellant requested respondent to bring the child about one mile to his office for treatment, and as to whether he informed respondent that it was dangerous and might prove fatal to bring the child from the home to his office for treatment because he was busy and could not make house visits. Respondent testified that appellant said nothing about it being dangerous to move the child, but did tell her she should bring the child to his office for treatment.

There is also a conflict in the testimony as to the responsibility for giving food to the child while it was under the treatment of appellant. Appellant testified that the food was given to the child by respondent contrary to his orders, while respondent testified as before stated.

It was admitted by experts of the same school of practice as appellant, testifying at the trial, that absolute or nearly absolute quiet is required by all schools of healing for patients suffering from appendicitis.

It was also proven that food should not be given to one suffering from appendicitis. One of appellant's experts testified that all food should be taken away; that he would regard as negligence the giving of food to the child, which would probably result in death.

Appellant stated, and it is conceded, that the first proposition of law governing the case is that it is the law in this state that a physician cannot be held liable for damages for merely making a wrong diagnosis, and that there can be no liability until an improper treatment follows the wrong diagnosis. Appellant then contends that the facts in this case show, beyond dispute, that the treatment which was given by appellant was the correct treatment according to the school or class to which he belonged, whether the disease from which the child was suffering was appendicitis or was as diagnosed by the appellant.

Of course, it must be admitted that, when respondent employed appellant to doctor her child, she knew that he belonged to what is called the drugless school of healing, which would not operate. She cannot be heard to complain because an operation was not performed or advised by appellant. She cannot employ a doctor whom she knows will not operate and then recover damages because an operation was not performed.

But, as indicated by the above statement of the facts, there was more evidence of negligence to go to the jury than the matters covered by the above proposition. While it is true that there was a conflict of evidence as to which was responsible for the moving of the patient, and for the giving of food to the patient, yet there is evidence that it was appellant who was responsible, and the facts were for the jury. Since appellant's own experts stated that absolute, or nearly absolute, quiet should be prescribed for a patient suf-

fering from appendicitis, and that the giving of food to such a patient was negligent, and probably would prove fatal, the jury believing these facts, the negligence of appellant was established.

It is true that a mere wrong diagnosis, unless followed by maltreatment, would not alone be sufficient to establish negligence as against a practitioner of medicine or healing. But when it became established that the child had been suffering for nine days from acute appendicitis, it then became established that the child suffered from a disease for which appellant gave wrongful treatment, if the evidence of respondent and her witnesses was believed, which the jury had a right to do.

The first error claimed by appellant involves this question to a certain extent—that is, that the court erred in permitting allopath doctors to testify as to their diagnosis of the disease, their operations, and various other matters in connection with their treatment of the case after they were employed, and also the methods which they would use to determine whether or not the patient did in fact have appendicitis.

According to the evidence of respondent, appellant, on January 6, surrendered or abandoned the case. Maternal affection and humanity both required that respondent employ some one else to treat the child in its then desperate condition. What they found was the result of their examination of the history of the case, and of their operation, which found a diseased appendix, and there could be no avoidance of introducing their evidence of what they found as to the condition of the child. The fact that they operated upon the child when appellant, in following the system of practice of the school of healing to which he belonged, would not operate, and what they found upon operating, cannot be held to prejudice appellant. The fact

was established by the operation by the allopaths, as well as by their preliminary examination, if they were to be believed, that the child was suffering from a diseased appendix, and that it had so suffered for nine days. Appellant, who was admitted to practice under Laws of 1919, ch. 36, p. 65, § 3, was required to satisfy the examiners that he was competent in the subject of symptomatology, which, of course, means about the same as diagnosis does to regular schools of medicine and healing. Undoubtedly, therefore, appellant had some skill required of him as to his ability to diagnose or determine diseases by symptoms. He and his experts contend that the treatment would have been the same whether the child was in fact suffering from spinal meningitis, infantile paralysis, or appendicitis, and that the treatment that he gave the child was the proper treatment for appendicitis, according to their system of healing; but they all admit that the symptoms of appendicitis are determined by the same methods by all schools of medicine or healing, except that the experts of the regular school testified that they usually gave blood tests for the purpose of counting the white corpuscles in the blood. If there was an excess of white corpuscles it indicated appendicitis. They made no such examination in the case of this boy, for the reason that his case was then very critical, and they knew that the case was a well developed case of appendicitis. All the other symptoms were present and it was unnecessary to make a leucocytic test. The fact that they testified that they usually did so in the earlier stages of appendicitis was of no harm to appellant. In fact, so far as the evidence shows to the contrary, those following the same system of healing as appellant may also use this same system of determining appendicitis in the early stages. Respond-

ent did not call in expert witnesses as such to testify in the case. The physicians who testified were the physicians who examined the boy and performed the operation, and examined the appendix after the operation. All that these physicians called by appellant testified to as experts they did on cross-examination by appellant's counsel and on re-direct examination covering the matters brought out by cross-examination, by counsel for respondent.

Counsel for appellant are in error, however, when they insist that all the expert testimony as to the character of the treatment given by appellant was that it was proper treatment. Under the admissions of appellant and the testimony of his expert witnesses of the same school of medicine as himself, there is evidence of negligent diagnosis and negligent treatment on the part of appellant sufficient to take the case to the jury.

The above being true, appellant's motions for directed verdict, and for judgment *non obstante veredicto* were both properly denied.

What we have said above largely disposes of the contention of appellant as to the testimony of allopathic doctors who treated the boy after appellant had ceased to treat him and who performed the operation. They gave no opinion as to such, except that the operation should have been performed nine days before they received the patient. That testimony, however, was received without objection on the part of appellant, and appellant cannot now complain of it.

Questions arise over the instructions given by the court to the jury. Appellant concedes that instruction No. 8 correctly states the law, as follows:

"You are instructed that in diagnosing the disease or ailment from which the patient was suffering, a physician is bound to use a degree of skill and learn-

ing which ordinarily characterizes the school or class of physicians to which he belongs, in the locality in which he practices, and if you find by a preponderance of the evidence that the defendant did not use that degree of skill and learning in this case, and as a result of such failure to use such degree of skill and learning wrongfully diagnosed the disease from which said child was suffering and then gave such child improper treatment for the disease from which he was suffering, then your verdict should be for the plaintiff.''

Other instructions are complained of as inconsistent with the instruction just quoted, and confusing in their effect upon the jury, as follows:

"No. 2. In order to entitle plaintiff to recovery herein, it must be established by a preponderance of the evidence in the case that the illness of said child was caused by appendicitis, that defendant negligently made an incorrect diagnosis or determination of the character of the illness of said child, and also that defendant negligently treated said child for an illness which he did not have, and failed to properly treat him for appendicitis and that as the direct result of said diagnosis and treatment the said child died. The burden of establishing said facts by a preponderance of the evidence is upon the plaintiff'' etc.

"No. 4. You are instructed that while persons who hold themselves out to the public as physicians are not required to possess the highest degree of knowledge and skill which the most learned in their profession may have acquired, yet they are bound to possess and exercise in their practice at least the average degree of knowledge and skill possessed and exercised by the members of their profession generally in the locality in which they practice.

"No. 5. You are also instructed that if you find from the evidence that there is more than one branch or school of physicians and surgeons which apply or use different methods in the treatment of diseases, each school or branch is entitled to practice in its own way, and a practitioner in any such school or branch is only expected to follow the methods ordinarily followed by

the school to which he belongs, and the question of his skillfulness, carelessness or negligence is not to be governed by the beliefs or practices of any other school of physicians or surgeons.

"You are further instructed that if you find from the evidence that the defendant in this case used or employed the methods ordinarily followed by the school to which he belongs in preparing for the treatment, and in the treatment of the child of plaintiff that, in that event, defendant would not be guilty and your verdict should be for the defendant."

Appellant argues that in one instruction the jury are told that appellant must possess "the average degree of knowledge and skill possessed and exercised by members of their profession generally in the locality in which they practice"; and in another instruction, the knowledge and skill which appellant must possess is limited to the school to which he belongs.

The first instruction complained of, No. 2, merely states the general rule of negligence as to incorrect diagnosis and improper or negligent treatment. It is not necessarily limited to any particular school, for all schools alike are liable under the same rules of negligence.

No. 4, however, would have been more complete, technically, if there had been added at the conclusion of the instruction "of the school of healing of which they are members." No. 5 is very explicit and states the law perfectly. Unless the jury were misled by the inconsistency between the incompleteness of No. 4 and the positive directness of No. 5, the instruction should not be held fatally erroneous. No. 6 tells the jury that if they find from the evidence that the defendant made a wrong diagnosis of the condition and ailment he would not be liable unless such wrong diagnosis, if they find any such to have been made, was followed by improper treatment; and should they find

from the evidence that the defendant did make a wrong diagnosis their verdict should be for the defendant unless they also found from the evidence that the defendant did not use ordinary care and skill in treating the child after making such wrong diagnosis. It was imperfect, standing alone, in that it did not conclude by saying ''according to the school of practice to which he belonged.'' No. 7 is a general instruction defining ''careless'' and ''negligent,'' as used in the instructions, and concludes to the effect that if the jury believe the defendant to have possessed all of the qualifications necessary to a competent and skillful physician, yet if it has been proven by a preponderance of the evidence that he was careless and negligent in his treatment of it, then the mere fact that he may have been competent and skillful constitutes no defense to the action.

We conclude, therefore, that instructions Nos. 2, 4, 5, 6, and 7, considered together with instruction No. 8, were not so deficient in not limiting the consideration of the jury in judging the skill and care of appellant in treating the child, to the school of practice to which he belonged, that the jury may have been impressed that they could judge of his care and skill by the tests required by other schools.

It is well settled that in such cases the test must be by the school of thought of which the alleged practitioner is a member. *Ennis v. Banks*, 95 Wash. 513, 164 Pac. 58; *State v. Smith*, 25 Idaho 541, 138 Pac. 1107; *Force v. Gregory*, 63 Conn. 167, 27 Atl. 1116, 22 L. R. A. 343; *Nelson v. Harrington*, 72 Wis. 591, 40 N. W. 228, 7 Am. St. 900, 1 L. R. A. 719; *McGraw v. Kerr*, 23 Colo. App. 163, 128 Pac. 870.

We consider that, upon the instructions as a whole, the case was fairly submitted to the jury upon that theory.

Complaint is also made of instruction No. 13, as follows:

"The court has allowed in this case the introduction of evidence known as expert testimony, and has allowed expert witnesses to testify herein. You are instructed that you are not bound by the testimony of such witnesses, but that you are to consider such testimony in connection with all other facts in evidence, and that you are to give such testimony such weight and credit as you shall deem it entitled to, and in taking into consideration the knowledge, skill and intelligence of such expert witnesses as disclosed in their testimony and by all the facts and circumstances shown and developed in their testimony. The value of opinion testimony is in all cases a question to be determined by the jury, and it is the duty of the jury to determine its verdict herein upon a consideration of all the evidence before them."

Appellant contends that, while this instruction may have been proper in certain cases, it was improper in this; that, in order to find for respondent herein, there must be testimony of medical experts showing that appellant was guilty of malpractice; therefore, the only testimony which could possibly support a verdict for respondent must be of medical experts. It is also contended that, unless the jury followed the evidence of the experts, there was nothing before them, because the evidence necessary to prove the case must be given by medical experts, citing *Wilkins' Adm'r v. Brock,* 81 Vt. 332, 70 Atl. 572; *McGraw v. Kerr, supra.*

Admitting, as does appellant, that this instruction is correct as an abstract matter of law, there is abundant reason for the giving of it in this case. All the experts for appellant admitted that moving the patient around was highly dangerous, and that giving him food was highly dangerous, and yet they stated as their conclusion that the treatment given by appellant was the correct treatment. Moreover, the fact that the expert

witnesses for appellant did not agree upon the affirmative defense pleaded by appellant as to the matter of putting the child in the care of allopathic physicians after it had been treated as it was treated by appellant, rendered this instruction proper and applicable to this case.

Finding no reversible error, the judgment stands affirmed.

MAIN, C. J., MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.