[No. 23196. Department Two. November 9, 1931.]

MURELL MUELLER, as *Administratrix, Respondent,* v. WINSTON BROS. COMPANY *et al., Appellants.*[1]

[1]Reported in 4 P. (2d) 854.

*Clark & Clark, J. Speed Smith,* and *Henry Elliott, Jr.,* for appellant National Hospital Association.

*Peters, Powell, Evans & McLaren,* for appellant Winston Bros. Co.

*Vanderveer, Beardslee & Bassett,* for respondent.

BEELER, J.—The first question presented for our determination is whether the amended complaint states a cause of action *ex contractu* or *ex delicto.* The appellants contend that the action is one to recover damages for the breach of an oral contract, and consequently the statute (Rem. Comp. Stat., § 183), which confers a right of action for wrongful death, does not apply. On the other hand, the respondent maintains, and the trial court so held, that the action is one sounding in tort. The cause was tried on that theory, and

the respondent was awarded damages for the wrongful death of her husband, Albert H. Mueller.

Before referring to the allegations of the amended complaint, brief reference should be made to the agreements executed by the appellants. For the sake of brevity, we shall refer to Winston Bros. Company as "employer," to the National Hospital Association as "association," and to Albert H. Mueller, the deceased, as "Mueller."

For some time prior to November 8, 1927, the employer was engaged in constructing a dam on the Skagit river, and employed some five hundred people at its camp. Mueller was employed as a steam shovel engineer. On November 8, 1927, the employer, with the consent and approval of its employees, entered into a written contract with the association whereby the employer agreed to deduct $1.25 per month from the wage of each of its employees and to turn over such moneys each month to the association, in exchange for which the association agreed to render all necessary medical and hospital care and attention for such employees as became sick or sustained injury. The contract further provided that, if the amount collected from the employees was less than three hundred dollars for any one month, the employer would contribute the difference. The employer also reserved the right to discontinue the medical attendant if and when it employed less than one hundred men at its camp. Furthermore, if the association failed "to provide the services and care intended by the contract," the employer "might engage whatever services might be necessary to the proper care of its employees, and charge the expense incurred thereby" to the association. In other words, under the contract the employer reserved the right to pass upon the fitness of the at-

tendant at the camp hospital. Two paragraphs of the contract are set out *haec verba:*

"(1) For the purposes of camp service the party of the first part (hospital association) will establish and maintain a properly equipped field hospital in charge of a competent medical attendant, in rooms to be provided by the party of the second part (Winston Bros. Company); such medical attendant to be at all times acceptable to the party of the second part; it being understood, however, that cases of a serious nature or those requiring continued treatment shall be removed to the general hospitals and placed under the care of the general physicians and surgeons of the party of the first part."

The contract then recites that the association maintains physicians and surgeons and hospitals at Sedro Woolley, Mount Vernon and Seattle, as evidenced in the following paragraph:

"(2) All necessary medical and surgical services by any of the physicians, surgeons and specialists employed by the party of the first part in their respective localities, which shall include services in either Sedro Woolley or Mount Vernon, Washington; provided that for those cases of the nature requiring special care not obtainable in the above mentioned cities, the parties of the first part shall provide services by physicians and surgeons and specialists in Seattle, Washington."

The parties operated under this contract until August 1, 1929, at which time the appellants, with the consent and approval of the employees of the camp, entered into a supplemental contract whereby it was agreed that the employer should deduct $1.75 per month from the wage of each of its employees, in consideration whereof the association agreed to furnish to the employees the advantages of its so-called "full coverage plan." This plan included certain classes of diseases which were excluded from the original plan

or contract. This supplemental contract was in force and effect at the time Mueller became sick.

Turning now to the amended complaint, we find it is alleged that Mueller was in the employ of Winston Bros. as engineer for some time prior to October 6, 1929; that there was an oral agreement between Winston Bros. and its employees whereby the former should deduct $1.75 per month from the wage of its various employees employed at the camp, and in return therefor the employees were to be furnished with medical care and treatment and hospital attention, and that a field hospital was to be maintained at the camp with a *qualified* physician in charge thereof; that the appellants had entered into an agreement whereby they should have joint charge, control and supervision in furnishing and providing the medical and surgical and hospital care and attention to the employees. It is further alleged that, on October. 1, 1929, Mueller became extremely sick, and that, on the evening of that day, he applied to Jones, who had theretofore been placed in charge of the field hospital as the camp doctor, and complained to him of suffering extreme pain; that thereupon Jones took charge of him and prescribed and gave him medicines; that the appellants wholly failed to furnish Mueller with a *qualified* physician and surgeon until the evening° of October 3, 1929, and, as a result of such delay and neglect, Mueller died from peritonitis which resulted from a rupture of his appendix, death occurring three days later—October 6, 1929.

The character of a pleading as to whether it states a cause of action *ex contractu* or *ex delicto* is to be judged by its allegations, and not by the matters stated as mere inducement. The basic allegations of the amended complaint are that the appellants disregarded their duty in the premises by negligently and

carelessly failing to furnish a *qualified* physician and surgeon at the camp hospital, and in failing to make timely diagnosis of Mueller's disease, and in failing to prescribe proper treatment therefor. The rule by which the character of a pleading is to be determined is well stated in *Boehrer v. Juergens & Anderson Co.,* 133 Wis. 426, 113 N. W. 655, as follows:

"Where a given default may constitute both a breach of contract and a tort, and the complaint contains apt allegations charging the default in both aspects, the question as to how the complaint should be construed becomes sometimes difficult. The true and logical test would seem to be that if it appears by the whole complaint that the contract is alleged chiefly or wholly by way of necessary inducement in order to show the existence of a duty, and the emphasis is laid upon willful or wrongful disregard of this duty, the intent is to charge a tort; while if the contract appears to be stated as the basis of the action, and the emphasis is laid not upon the willful or negligent breach of duty, but upon default in carrying out the contract, the intent is to charge a mere breach of contract. The question has frequently arisen in actions against common carriers where it becomes necessary to set forth the contract of carriage in order to show that the defendant was charged with the responsibilities of a common carrier, and the rule above stated seems to be the fair result of the authorities. [Citing cases.] Practically the same principle has been applied to an action by a patient against a physician for malpractice."

The rule is well expounded in the case of *Nelson v. Harrington,* 72 Wis. 591, 40 N. W. 228, 1 L. R. A. 719, 7 Am. St. 900, as follows:

"The question has been raised whether this is an action for the breach of a contract, or one sounding in tort for the alleged unskillful and negligent manner in which the defendant, as a physician, performed his duty to the plaintiff. Although the complaint alleges the implied contract of the defendant to treat the

plaintiff in a skillful and proper manner, yet the *gravamen* of the action is alleged to be that the defendant disregarded his duty in the premises by negligently, wrongfully, and carelessly failing to make a proper diagnosis of the plaintiff's disease, and to prescribe proper remedies therefor. These allegations characterize the action. They show it to be solely for a breach of defendant's duty as a physician, founded upon his legal obligations as such, without reference to the implied contract. The contract is stated in the complaint as mere matter of inducement, and might as well have been omitted. It must be held, therefore, that the action is for the breach of duty,—the negligence and wrong,—and not upon the contract.''

Tested by these rules, we are of the opinion that the amended complaint in this cause sounded in tort. The allegations concerning the agreement between the parties must be considered as mere matters of inducement, and not to characterize the action. The appellants installed a field hospital at the employer's camp, and placed Mr. Jones in charge thereof, who was not a licensed physician or qualified to correctly diagnose disease, and who was legally inhibited from so doing. The notices posted at the camp directed the employees who needed medical services to apply to the ''camp doctor''—in the present case Mr. Jones—and recited that the association would not be responsible for medical or surgical treatment outside the camp unless authorized by the ''camp doctor.'' Mueller developed acute symptoms of appendicitis on October 1, 1929, and consulted Mr. Jones, the camp doctor, who diagnosed the symptoms as a stomach or internal disorder, prescribing certain mild remedies therefor, but delayed sending Mueller to a hospital or securing the attendance of a qualified physician until October 3, 1929. Upon Mueller's removal to a nearby hospital at Sedro Woolley, it was ascertained that he was suffering from

acute and advanced appendicitis. An operation disclosed that the appendix was already ruptured, and he died from resulting peritonitis.

If the amended complaint had merely alleged that the appellants failed to furnish medical and hospital care to Mueller, as required by the oral contract entered into between Winston Bros. and its employees, then the appellants' contention that the cause of action is one for breach of a contract, might be sound. But the allegations of the amended complaint are not so restricted. It is alleged that the appellants negligently failed to have a *qualified* doctor in charge of the camp, and that Mueller was not provided with a qualified physician until October 3, and that, by reason of such delay, he sustained a ruptured appendix which caused his death.

If the negligent breach of a contract at the same time violates a common law duty, and injury results therefrom, if the person injured so elects an action *ex delicto* will lie. If the appellants undertook to furnish the employees with a physician at the camp, then they were under the implied duty to use reasonable care in the selection of a competent and skillful physician.

"Though a tort is a breach of a duty which the law, in distinction from a mere contract, has imposed, yet the imposition of it may have been because of a contract, or because of it and something else combining, when otherwise it would not have created the duty. In such a case the party injured by the nonfulfillment of the duty may proceed against the other for its breach or for the breach of the contract at his election, for one overlaps the other. This is illustrated by cases against common carriers, telegraph companies, innkeepers, etc., upon whom the law in the interest of the public has imposed certain duties, a breach of which is a tort, though there is also a contract which is violated by the same act. Or an illustration more analogous to the facts in the case under consideration

might be made by the following hypothetical case: If a railway company, having undertaken to furnish its employees medical and surgical treatment, through its failure to exercise ordinary care in procuring the services of a competent and skillful physician, employed an incompetent and unskillful one, who, by reason of his incompetency or lack of skill, in attending one of the company's servants, failed to treat him with proper care and skill, whereby the employee was injured, the company would be guilty of a tort, as well as of a breach of contract.

"But the tort, though connected with the contract, would arise from the company's failure to discharge the duty imposed upon it by law. While independent of a contract no duty rests upon a master to furnish his servants with medical and surgical treatment, yet if he undertakes to furnish such treatment, the law imposes upon him the duty to use reasonable care and diligence in engaging the services of a competent and skillful physician and surgeon for that purpose. And if, through his failure to exercise such care and diligence, the physician employed is incompetent and unskillful, and, through such incompetency or lack of skill in the treatment of the servant, injures him, the law holds the company responsible for its failure to discharge the legal duty thus imposed upon it. Such liability rests upon a failure to discharge a *duty imposed by law,* and is independent of any duty arising from a contract." *Galveston H. & S. A. Ry. Co. v. Hennegan,* 33 Tex. Civ. App. 314, 76 S. W. 452.

Whether the agreement between Winston Bros. and its employees required the appellants to maintain a *qualified* physician and surgeon at the camp hospital, or merely a first aid attendant, and whether Mueller knew that Jones was not a physician, were questions which the trial court, under proper instructions, submitted to the jury for its determination. Commenting on this phase of the controversy, the trial judge, in passing on appellants' motion for a new trial and for judgment n. o. v., tersely and ably said:

"There is no evidence that the decedent, Albert H. Mueller, ever saw said contract or that he knew the terms thereof. So far as the evidence shows, all the knowledge he had of it was from the placards (plaintiffs' Exhibit A) posted in the camp and which in part are as follows:

" 'Notice

" 'The employees of this camp are protected by the National Hospital Association of Portland, Oregon, and are entitled to medical and surgical and hospital care, etc., for both sickness and injuries occurring during or out of working hours. . . . When needing services, apply to the Camp Doctor. The National Hospital Association will not be responsible for medical or surgical treatment rendered outside of camp unless referred by Camp Doctor. . . .

Respectfully,

Winston Bros. Co.'

"The jury might well find that by this placard, the defendants held out the attendant at the camp to be a doctor. By directing the employees when ill to apply to said attendant, they impliedly represented to such employees that said attendant had sufficient knowledge of medicine to treat them, or if their condition was beyond his skill, to send them out of camp for medical attention. There was no one else at the camp to whom an employee when ill could apply. In fact, by the terms of the placards, if an employee left camp for medical attention, except by direction of said camp attendant, the defendants would not be responsible for the same. The responsibilities of such camp attendant were heavy, and called for a more experienced person than one who had had only first aid experience. It is not claimed that E. N. Scott, the attendant placed at the camp by the defendants, was a competent medical attendant, or that he had any medical experience at all except that he had served for a short time as a first aid man. The defendants must have known of his incompetency for the position he held. In any event, the slightest sort of investigation would have disclosed his incompetency to them. Whether or not the de-

cedent knew that said attendant was not a doctor, or that he was incompetent, was a question for the jury.''

■ While the prayer is not an essential part of a complaint, yet it may be considered in determining the character of the cause of action alleged. *Aid v. Bowerman,* 132 Wash. 319, 232 Pac. 297; *Rochester v. Wells Fargo & Co. Express,* 87 Kan. 164, 123 Pac. 729, 40 L. R. A. (N. S.) 1095; *Green v. Davis,* 67 Colo. 52, 185 Pac. 369; *United Bank & Trust Co. v. Fidelity & Deposit Co.,* 204 Cal. 460, 268 Pac. 907.

We are satisfied that the amended complaint states a cause of action *ex delicto* and not *ex contractu.*

■ It is suggested by the appellants that Mueller might have died from the disease even though Jones might have been a qualified and licensed physician, and consequently the negligence was not the proximate cause of his death. The suggestion is without merit. Where a wrongful violation of an imposed duty occurs, and injury results which is the natural and probable consequence thereof, the wrongdoer must bear the consequences of his wrongful act. There was evidence introduced tending to prove that, when an operation for appendicitis is performed before the appendix is ruptured, the mortality is very low—approximately less than five per cent—but a delay in operation is dangerous, and if the appendix ruptures in the meantime, usually fatal. Here there was a delay of approximately fifty hours before the operation was had, which disclosed a ruptured appendix. Under the circumstances, the jury were warranted in finding that death was caused by such undue delay.

In the case of *Wilcox v. Carroll,* 127 Wash. 1, 219 Pac. 34, we sustained a recovery for wrongful death where a drugless healer in an appendicitis case made a wrong diagnosis and followed it with maltreatment

for nine days, when an operation was performed by a competent surgeon which revealed a ruptured appendix, from which death ensued.

■ Much is said and many authorities cited by appellants in support of the so-called charitable hospital doctrine. Under the evidence, there is no room for the application of this doctrine. The camp hospital was established, conducted and maintained for the benefit and profit of both appellants. True, the employer may have derived no direct monetary profit from the operation of the hospital; but it is clear that it derived indirectly many benefits. It kept the employees at the camp where they were treated, and thereby materially reduced the labor turnover. The fact is incontrovertibly established that the hospital was maintained for profit; and the fact, if it be a fact, that the employer in no way participated in the profits and permitted them to be taken by the association, in no manner changed the character of the institution from one of profit to a charitable enterprise. Persons or corporations who conduct private hospitals for profit are liable for the negligent acts of the servants employed by them. The authorities are uniform on this question. *Robertson v. Towns Hospital,* 178 App. Div. 285, 165 N. Y. Supp. 17.

Several errors are assigned based upon the giving of certain instructions, and the refusal to give certain others. We find it unnecessary to analyze and discuss them separately. The instructions that were given were comprehensive, and in our opinion, defined the law applicable to the case with fairness to both parties. Some of the instructions offered and rejected by the court were incorrect expositions of the law applicable to the case.

■ Several errors are assigned on the rejection and admission of testimony. The appellants offered

to prove by witnesses that, on the night of October 1, Jones had stated that he had urged Mueller to go to the hospital at Sedro Woolley on the following morning. The trial court properly excluded this testimony on the ground that it was pure hearsay. The case of *Russell v. Cavelero,* 139 Wash. 177, 246 Pac. 25, relied on by the appellants, has no application to the situation here presented.

Nor did the trial court err in admitting the testimony of Mrs. Mueller as to what her husband had said after Jones had had the conference with him on October 2. Jones had testified that he saw Mueller about ten o'clock on the forenoon of October 2, and that he took his temperature and advised him to go to the hospital, but that Mueller was determined to go to work. This testimony was admissible in rebuttal to the testimony of Jones both as to the physical and mental condition of the decedent.

Nor did the trial court err in refusing to grant a new trial on account of misconduct on the part of respondent's counsel, or on the part of the trial court, or in refusing a continuance on the ground that Mrs. Mueller at the time of the trial was pregnant.

Finding no error in the record, the judgment is affirmed.

TOLMAN, C. J., MILLARD, HOLCOMB, and BEALS, JJ., concur.