[No. 3305–II.  Division Two.  January 14, 1980.]

GORDON O. MOSTROM, ET AL, *Appellants*, v. BURL
R. PETTIBON, ET AL, *Respondents*.

*Paul J. Kleinwachter,* for appellants.

*James P. Moceri,* for respondents.

SOULE, J.—Gordon Mostrom appeals from the Superior Court's award of summary judgment for defendants, practitioners of chiropractic medicine, in his action against them for malpractice. The issue is whether the court properly concluded the action as joined presented no genuine issues of fact to go to a jury. We hold that the case presents material issues of fact concerning viable theories of recovery, and we reverse.

The affidavits, depositions, and pleadings establish the following facts. In April of 1971, plaintiff was injured at work when struck in the back by a push cart. He stated he felt pain in his neck, back, and hips, radiating down his right leg. He visited Dr. Buel Sever, his family physician, for treatment on May 3, 1971. He had visited Dr. Sever in 1969 and in 1970 complaining of back pain, but no X rays were taken and plaintiff had recovered with heat treatments. Dr. Sever's records showed that when plaintiff came in on May 3, 1971,

> he felt like there was pain in his abdomen going through to his back and he said his muscles hurt all around from

the abdomen through to his back and that he had some vomiting and appetite was kind of failing him.

He had no other complaints. Dr. Sever suspected an ulcer and ordered X rays, an upper gastrointestinal series, which was done the next day. The X rays showed a mild deformity of the duodenal cap, and Dr. Sever, diagnosing an "ulcer brewing," treated plaintiff with antacids and dietary instructions. Plaintiff's own recollection was that he saw Dr. Sever in May for back and leg pain due to the push cart accident, and that he got a heat treatment at that time.

In any event, on May 6, 1971, plaintiff saw Dr. Brian Long, a chiropractor associated with defendant Pettibon Clinic, complaining of lower back pain and weakness and numbness in the legs. After examining plaintiff and taking X rays, Dr. Long diagnosed subluxation (dislocation) of the spine which he deemed amenable to chiropractic treatment. The symptoms included restricted lateral flexions of the neck; restricted extension and rotation of the neck; restricted lumbar flexions, front and in both lateral directions; electrical shocks in the extremities produced by full backward extension of the neck; the subluxations visible in the X rays; and "advanced pathology of a chronic nature" visible in the X ray of the cervical spine. On May 7, 1971, Dr. Long commenced chiropractic treatment by means of an "adjustment" of the neck by application of pressure. Plaintiff returned for eight more "adjustments" of the neck or back in May, nine more in June, and two in early July. On July 6, Dr. Long took an X ray and pronounced the treatments successful, stating that plaintiff was free of pain.

On July 7, 1971, plaintiff was again injured at work when struck in the head by falling doors. He returned to Dr. Long on July 10 complaining of severe headaches, back pain, and more leg weakness and numbness. Dr. Long found "left spasms of the trapezius muscle; very restricted cervical motions; dull, constant pain exaggerated on extreme neck movements." He took more X rays and diagnosed worsened subluxation of the neck vertebrae, a narrowing of the space between C–3 and C–4, and C–5 and

C–6, and some large hypertrophic changes, *i.e.*, osteophytic spurring, on C–3, C–4, C–5, and C–6. Dr. Long continued chiropractic treatment, including neck "adjustments," several times between July 10 and 23. Meanwhile, plaintiff returned to Dr. Sever on July 12, 1971, complaining of pain in the right knee and difficulty in walking. He did not complain of any other pain or report any injuries. Dr. Sever observed swelling in the knee and diagnosed rheumatoid arthritis.

On July 26, plaintiff came to Dr. Long's office on crutches, walking with difficulty and experiencing severe lower back pain. His right leg was losing strength. His neck was resubluxated, and Dr. Long adjusted it. Dr. Long also stated that he recommended that plaintiff consult a neurologist or orthopedist in case spinal cord injury was involved. Plaintiff denied that Dr. Long so recommended. Nevertheless, plaintiff went to see Dr. George Race, an internal medicine specialist, on July 16. Dr. Race learned about the accidents at work in April and on July 7 and that plaintiff had been treated by Dr. Sever and the Pettibon Clinic. Dr. Race examined plaintiff, who was walking awkwardly and staggering, and tentatively diagnosed an ulcer, arthritis of the spine, and possible spinal cord injury. He referred him to a neurologist, Dr. George Delyanis, who first saw him on August 13. Meanwhile, plaintiff continued to visit Dr. Long for treatments on July 28 and 30 and August 2, 5, and 10.

Dr. Delyanis diagnosed cervical (neck) cord compression and ordered a myelogram. The myelogram showed an obstruction of the spinal cord at the neck vertebrae C–4 and C–5. Plaintiff's condition continued to deteriorate. Dr. W. Ben Blackett performed surgery on August 19 to remove the extruded disc material that was found to be compressing the spinal cord.

Following surgery plaintiff did not recover full use of his arms and legs and was classified as totally and permanently disabled for purposes of carrying on any sort of work or productive function. He sued Dr. Long and the Pettibon

Clinic for malpractice, claiming that the chiropractor should have recognized that his symptoms indicated a medical problem, that he should have been referred promptly to a medical doctor, and that the chiropractic treatment delayed medical treatment and, in fact, aggravated his condition.

██ ██ In reviewing the summary judgment for defendants, we are mindful of the rule that a motion for summary judgment is to be granted when, construing the evidence in the record in favor of the nonmoving party, no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. *E.g., Morris v. McNicol,* 83 Wn.2d 491, 494, 519 P.2d 7 (1974); *Adamski v. Tacoma Gen. Hosp.,* 20 Wn. App. 98, 103, 579 P.2d 970 (1978). The trial court must deny a motion for summary judgment if the record shows any reasonable hypothesis which entitles the nonmoving party to relief. *Adamski v. Tacoma Gen. Hosp., supra.* CR 56(e) requires that affidavits submitted in support of or opposition to a motion for summary judgment set forth facts based upon personal knowledge admissible as evidence to which the affiant is competent to testify. However, evidence may be presented in affidavits by reference to other sworn statements in the record such as depositions and other affidavits. *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wn.2d 874, 878, 431 P.2d 216 (1967); *Caldwell v. Yellow Cab Serv., Inc.,* 2 Wn. App. 588, 592, 469 P.2d 218 (1970).

██ Chiropractors and other drugless healers who are licensed providers of primary patient care owe a duty to exercise reasonable care in the diagnosis and treatment of their patients and a duty to inform them when nonmedical treatment has become useless or harmful and medical treatment should be sought. *Kelly v. Carroll,* 36 Wn.2d 482, 492, 497, 219 P.2d 79, *cert. denied,* 340 U.S. 892, 95 L. Ed. 646, 71 S. Ct. 208 (1950); Annot., 58 A.L.R.3d 590, 591 (1974); Annot., 19 A.L.R.2d 1191–92 (1951). In determining whether a chiropractor breaches these duties, he is held to the standard of care of a reasonable chiropractor in the

same circumstances. *Carney v. Lydon,* 36 Wn.2d 878, 880, 220 P.2d 894 (1950); 19 A.L.R.2d at 1192. *See generally Hayes v. Hulswit,* 73 Wn.2d 796, 797, 440 P.2d 849 (1968).

The trial court found that the facts supported a finding of no negligence as a matter of law inasmuch as plaintiff saw Dr. Sever once in early May and again on July 12, 1971, and it could not be said, therefore, that defendant's chiropractic treatment prevented or delayed him from receiving medical treatment.

Although the court's conclusion may be correct as far as it goes, it ignores the other possible breach of a duty imposed on chiropractors, *i.e.,* the duty to use reasonable care in the course of treatment. This duty has three related aspects pertinent to this case: (1) to diagnose a medical problem as contrasted with a chiropractic problem; (2) to refrain from further chiropractic treatment when a reasonable chiropractor should be aware that the patient's condition is not amenable to chiropractic treatment and that continuation of such treatment may aggravate the condition; (3) to refer the patient to a medical doctor when a medical mode of treatment is indicated. *See Carney v. Lydon, supra; Kelly v. Carroll, supra; Salazar v. Ehmann,* 505 P.2d 387 (Colo. App. 1972); Annot., 58 A.L.R.3d 590 (1974). A breach of duty, if it proximately caused plaintiff's permanent injury, could result in damages from the continued administration of chiropractic treatments, aside from any delay in obtaining medical treatments.

Chiropractic treatment is defined by statute as the treatment of subluxations of the spine by adjustment or manipulation of the vertebral column. RCW 18.25.005. *See also State v. Wilson,* 11 Wn. App. 916, 528 P.2d 279 (1974). It is clear that a chiropractor and other similar health care practitioners who depart from statutory limitations and practice medicine are liable for negligent treatment. *E.g., Kelly v. Carroll, supra* at 492; *Faasch v. Karney,* 145 Wash. 390, 260 P. 255 (1927). *See also Ritter v. Sivils,* 206 Ore. 410, 293 P.2d 211 (1956). Defendants suggest that because Dr. Long was treating spinal subluxations by means of

adjustments, his method of treatment fell within the statute and he cannot be liable for any aggravation of plaintiff's injuries as a matter of law. This argument, however, ignores the fact that evidence of a drugless healer's treatment within the limits of his licensing limitations can still form the basis for liability if he has breached his duty to cease treatment or refrain from treating and refer the patient to a physician. *See Wilcox v. Carroll,* 127 Wash. 1, 219 P. 34 (1923); *Salazar v. Ehmann, supra; Deward v. Whitney,* 298 Mass. 41, 9 N.E.2d 369 (1937); *Tschirhart v. Pethtel,* 61 Mich. App. 581, 233 N.W.2d 93 (1975); *Ison v. McFall,* 55 Tenn. App. 326, 400 S.W.2d 243 (1964).

It becomes necessary for us, therefore, to examine the record before the trial court and determine if the affidavits, depositions, and medical records raise genuine issues of material fact whether the chiropractic treatments beginning on July 10 aggravated plaintiff's condition; whether Dr. Long should have realized they could aggravate that condition; and whether he should have declined to administer further treatments and directed plaintiff to see a physician. As noted, the requirements under CR 56(e) for supporting and opposing affidavits with reference to a motion for summary judgment are that they

> shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See also Peterick v. State,* 22 Wn. App. 163, 180–81, 589 P.2d 250 (1977).

The motion for summary judgment was supported primarily by the affidavit and deposition of Dr. Long, in which he described at length his diagnosis and progression of treatment for Mr. Mostrom.

In opposition to the motion for summary judgment plaintiff submitted depositions of Drs. Blackett, Race, and Sever and three affidavits by a licensed chiropractor, Dr. Peter J. Modde. Dr. Modde did not see plaintiff personally. In his first two affidavits Dr. Modde listed the standard chiropractic diagnosis procedures, stated that he had reviewed the depositions of the plaintiff, the defendants and the medical doctors who had diagnosed or treated plaintiff, and concluded that the symptoms described in the record indicated a severe cervical injury which should have received immediate medical treatment; that the chiropractor did not engage in a "proper diagnostic workup" and should have refrained from spinal manipulations. Although Dr. Modde's description of standard chiropractic procedures in his first two affidavits is in acceptable form, the general references to the depositions and records are insufficient under CR 56(e) to refute a motion for summary judgment. They do not set forth specific facts showing a genuine issue for trial.

Dr. Modde's third affidavit stands on firmer ground, however. In it he quotes several excerpts from the Long affidavit regarding the symptoms Dr. Long encountered and the treatment he followed. Dr. Modde specifically indicates that the three X rays taken on July 10, 1971 were too limited, the narrowing of the cervical interspaces and the hypertrophic changes on the vertebrae indicated a "predisposition or weakness to further insult or injury," and that these facts before Dr. Long warranted a different diagnostic workup and a referral for neurological examination. This affidavit contains specific facts pertaining to the alleged breach of Dr. Long's duty to use proper diagnostic procedures in concluding whether the problem was chiropractic

and not medical in nature, and if it was medical, to refrain from chiropractic treatment and refer the patient to a medical doctor. In addition, an affidavit may refer to another person's deposition and qualify as testimonial knowledge, as long as the affiant could testify in court about the content of the deposition. *Meadows v. Grant's Auto Brokers, Inc., supra.* Here, Dr. Modde could give expert testimony regarding the standard of care, *i.e.,* proper diagnostic procedures for a chiropractor to follow, given plaintiff's symptoms, and what course of action was dictated by prevailing standards of professional care.

The deposition of W. Ben Blackett, M.D., is also important in deciding whether the trial court erred in granting a summary judgment to the defense. Dr. Delyanis, a neurologist in practice with Dr. Blackett, first referred Mr. Mostrom to him on August 18, 1971, due to the rapidly progressing weakness in plaintiff's arms and legs. Dr. Blackett examined plaintiff in the hospital, viewed the myelogram showing an obstruction in the spinal canal at the C–4 and C–5 level, and confirmed the findings and diagnosis of Dr. Delyanis.

Dr. Blackett was asked for his medical opinion, and concluded that Mr. Mostrom's disability was caused by a compression of his cervical cord by a central herniated disc—the material he surgically removed on August 19, 1979—and that the herniation probably began with the industrial accident on July 7 and was aggravated by the subsequent chiropractic manipulations. The defense contends Dr. Blackett's opinions should not be considered in connection with the motion for summary judgment because they are based, at least in part, on alleged hearsay—a medical history given by Mr. Mostrom and his wife to Dr. Delyanis and made known to Dr. Blackett prior to surgery only through a written summary prepared by Dr. Delyanis; because the opinions were also based on speculation as to what form of treatment Dr. Long had applied to Mr. Mostrom; and because the opinions do not reach the level of testimonial knowledge.

The record shows that Mr. Mostrom told Dr. Blackett he had undergone "neck snapping" by a chiropractor, which Dr. Blackett understood to mean manipulations of the neck. In his deposition Mr. Mostrom described a technique whereby the chiropractor "trips the hammer" on his neck. Moreover, at trial Dr. Delyanis obviously could be called to sponsor the admission into evidence of his written case history and findings on which Dr. Blackett relied to supplement his own examination prior to surgery. Dr. Blackett could then be asked if that were in fact the report he had reviewed. At that point in the trial, the foundation would be laid for Dr. Blackett to state his opinion on the original cause of the disc injury and its aggravation by chiropractic adjustments, based on the case history contained in the Delyanis report; the progressive symptoms stated therein and confirmed by his own examination; his own review of the myelogram; and the herniated disc he encountered in surgery. Dr. Blackett's statement of opinion would be probative of one of plaintiff's theories of liability, namely, that the chiropractor's treatments in July and early August were responsible for an advanced state of disability that surgery was not able to rectify at that late date.

The purpose of summary judgment is to avoid useless trials on formal issues which cannot be supported factually or, if factually supported, could not as a matter of law lead to a result favorable to the nonmoving party. *Peterick v. State, supra* at 179. This is not such a case. This is a case in which the proposed testimony for the plaintiff, as set forth in the affidavits and depositions of Drs. Modde, Blackett, plaintiff himself, and the other physicians involved, when construed against defendants' motion for summary judgment, do present issues of fact on material issues of defendants' duty, the applicable standard of care, and proximate cause of the injury. It is true the chiropractic treatments did not prevent plaintiff from visiting a physician while he was having them; but other theories of liability derived from the complaint include the allegation

that Dr. Long misrepresented the back pain as a chiropractic and not a medical problem, which may have led plaintiff into thinking he had no reason to mention it to Dr. Sever on July 12; that Dr. Long should have recognized the problem as medical in nature, ceased his own treatments, and promptly referred plaintiff to a medical specialist; and that the continued chiropractic treatments in July and August aggravated plaintiff's injury. With the factual issues in the record concerning these theories of liability, a judgment precluding their presentation to a jury was inappropriate.

The judgment is reversed.

REED, A.C.J., and PETRIE, J., concur.