No. 22,746.

J. B. HINTHORN, *Appellant,* v. E. V. GARRISON as Administrator of the Estate of E. J. BOORN, *Appellee.*

SYLLABUS BY THE COURT.

MALPRACTICE—*Chiropractic Treatment—Demurrer Wrongfully Sustained.* The record shows evidence on behalf of the plaintiff which should have been permitted to go to the jury, and it was error to sustain a demurrer thereto.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed March 12, 1921. Reversed.

*E. L. Burton,* and *Paul MacCaskill,* both of Parsons, for the appellant.

*C. J. Taylor,* of Parsons, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for damages alleged to have been caused by the defendant in giving a chiropractice treatment. The court sustained a demurrer to the plaintiff's evidence, from which ruling this appeal is taken. The petition alleged that on the 16th of May, 1917, the plaintiff as a patient was treated by the defendant in a careless and negligent manner by thrusting his thumb between the shoulder blades with such force and violence as to dislocate the plaintiff's ribs from the "spinal process," injuring the plaintiff and causing double curvature of the spine; that he failed to treat properly such injuries, by reason of which the plaintiff has double curvature of the spine and two ribs loosened from the "spinal process"; and that the injury will be permanent.

The answer so far as the alleged injury is concerned was a general denial.

The defendant's books show a charge for treatments from May 16 to 18, 1917, inclusive.

The plaintiff testified that he had been in the furniture business for something like twenty-five years. He suffered from grippe, and took treatments from the defendant. Prior to the 16th day of May, 1917, he never had any nervous trouble and never suffered with any back or spine trouble and the part of his back and spine about his shoulders had never been sore. He did not strike or injure himself in any way on that day. When he got out of the defendant's office on May 16 he was suffering intensely. His back and spine after that time continued sore and sensitive and as a result of the condition he had to guard against anything like heavy lifting or any pressure on the spine. In the way of trying to seek rest he had to steer clear of any pressure of any kind around the spine. To lie in comfort he had to be bolstered up at an angle of forty-five degrees, most of his sleep being obtained in a rocking chair. Before that time he had no difficulty in sleeping and since that date he has been unable to sleep except part of the night.

Doctor Williamson testified that he examined the plaintiff and in his opinion the condition was caused by some injury to his spine. Doctor Montgomery, a chiropractor, testified that when he examined the plaintiff he found him suffering with intense pain in his back about the region of his shoulder blades, and with insomnia. He found a contracted condition of all the muscles in that region and an impingement of the nerves about the sixth dorsal vertebra. He had an X-ray picture taken and from his examination of the picture he thought the trouble was double scoliosis. He testified that the mechanical method of chiropractic is the adjusting of the spinal column to its normal position with the hand:

"The hand is used in various ways, we have the hold that is called the thumb hold. The bilateral hold is given by that way, the crossed-thumb hold is given that way, the hand movement is given that way . . . We brace the thumb in that situation, cross thumbs your hands crossed and use flat-hand movement or pressure. The kind and amount of pressure is regulated by the skill of the physician knowing what he is about to do. That is the scientific part of it."

Doctor Hay testified among other things that from the X-ray picture he found the plaintiff's spine in an abnormal position, showing a slight double curvature.

"The curvature was probably caused by force, it is either by some force or disease of the vertebræ; it may be caused by disease but it doesn't show any disease of the vertebræ."

The plaintiff insists that it was error to sustain a demurrer to his testimony, and that is the only point before us. The rule is thoroughly established in this state that before a demurrer can be sustained the evidence and all fair inferences to be drawn therefrom must fail to show or tend to show the plaintiff's right to recover. Any substantial evidence must be submitted to the jury for their consideration. (*Mentze v. Rice,* 102 Kan. 855, 172 Pac. 516; *Dudas v. Railway Co.,* 105 Kan. 451, 185 Pac. 28; *Reddy v. Graham,* 106 Kan. 339, 187 Pac. 653.)

It is argued by counsel in his brief that the evidence fails to show that the plaintiff was treated on the 16th of May, but we think the testimony quite convincing that he was. Also, it is contended that the plaintiff must show that the muscles of his arm and shoulder were permanently impaired and he was rendered unable to sleep by the alleged treatment by the defendant. While he alleged permanent injury, proof of temporary injury would be sufficient for a recovery.

It is argued that plaintiff must prove that the defendant did not exercise ordinary skill as a chiropractor. This is correct, but the quoted part of the evidence taken by itself without any explanation tends to show that a chiropractor who treated a man entirely free from any trouble with his spine who thereafter suffered as the testimony shows the plaintiff did must have been unskillful or careless.

The judgment is reversed, and the cause is remanded with directions to overrule the demurrer to the plaintiff's evidence and for further proceedings in accordance herewith.