No. 33,118

Delbert Adams, *Appellee*, v. Lloyd Casebolt, *Appellant*.

(63 P. 2d 927)

Opinion filed January 9, 1937.

*M. P. Shearer*, of Wichita, and *Harold W. Herrick*, of Winfield, for the appellant.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham*, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

Burch, C. J.: The action was one for damages for personal injury sustained by plaintiff when two autotrucks, one in which plaintiff was riding, and one driven by defendant, collided in daylight on a broad graveled public highway. Plaintiff recovered, and defendant appeals.

The testimony was conflicting. No special findings were requested by either party or were submitted by the court. The general verdict settled all disputed questions of fact, and an abbreviated statement of the facts of the accident will be made from the testimony favorable to plaintiff.

Going south from Dexter, the general direction of highway No. 15 is toward the south. At a point some three miles south of Dexter the road turns toward the west, curves round a hill, and gradually turns southeast, and eventually south. It is steeply upgrade until the vertex of the curve is reached, where the surface of the road

"levels off." At the curve the road was cut into the hillside, and a high bank rose up on the inside of the curve. Next to the bank was a depression, probably four feet wide. The depression was referred to as a ditch, was described as not much of a ditch, was readily usable for automobile traffic, and defendant drove his truck into and out of the depression after the collision. Next to the ditch was a graveled roadway, which defendant's chief witness to the fact said was twenty-nine feet wide. West of the roadway was a shoulder, probably two feet wide. From the outside of the shoulder the ground sloped abruptly downward several feet. The curve was a banked curve, sloping from the outside toward the inside.

In PWA work conducted out of Burden, which is north of Dexter, a Reo truck, with an enclosed cab and a flat bed behind the cab, was used. On the morning of the accident the truck went for some material south of Dexter. It contained some skid timbers for use in the work, which lay on the truck bed and were held in place by a log chain. The truck was driven by Ray Dilley, and is referred to as the Dilley truck. In the cab with the driver sat Levi Pickens, foreman of a crew of employees, consisting of three men, who sat in the bed of the truck, with their backs toward the cab. Plaintiff was one of the crew, and sat on a nail keg.

As the truck proceeded uphill toward the curve, Pickens opened the door of the cab and asked how the men in the back of the truck were riding. One of the men said the skid boards were slipping and asked that the truck be stopped at the top of the hill to fix the boards. Pickens said, "All right." When the truck reached the top of the hill and was at the most westerly portion of the curve, Dilley, who had been driving on the west side of the road, pulled to the west as far as he could, intending to stop for adjustment of the skids. While in the act of stopping, and when the truck was practically stopped, the truck was struck by defendant's truck, going toward Dexter. The forward lefthand corner of the steel-bound bed of the Casebolt truck struck the gasoline tank under the seat of the Dilley truck and opened the tank. The escaping gasoline was ignited, and the truck was instantly in flames. One man was so badly burned he did not survive, Pickens was burned, and plaintiff was severely burned.

When it was struck the Dilley truck was on the west side of the road, west of the center. The truck did not move after it was struck, was not pushed by the impact of the Casebolt truck, and

burned where it stood. While the truck was burning, traffic passed by, between the truck and the east side of the road.

Just before stopping Dilley saw the Casebolt truck coming from the south, about 300 feet away, at a speed of thirty-five to forty miles per hour. "It looked like he was coming square at us." The subsequent erratic movements of the Casebolt truck need not be described.

Casebolt said he did not see the Dilley truck until he was within twenty feet of it. It was possible for that to be true. If so, accepting, as we must, plaintiff's evidence, it was not from sharpness of curve, obstruction of vision, or lack of opportunity to see, and the fact merely enhanced Casebolt's culpability.

The trial was a second trial. Before the second trial plaintiff went to the scene of the accident, found the main features unchanged, located the place where the truck burned, placed some automobiles side by side, between the place where the truck stood when it burned and the bank, and took photographs of the created scene. Three of the photographs were separately offered in evidence, to make visual to the jury the wide space between the place where the Dilley truck was struck and the bank east of the road. The evidence was rejected, and of course defendant does not complain of the rulings. He does complain, however, that counsel for plaintiff were guilty of misconduct in making the offers, in that they impressed on the jury what the photographs showed.

After the first offer the court gave counsel permission to make subsequent offers for the record, and what counsel did in each instance was to state what the purpose of the offer was. In the colloquy between court and counsel concerning the offers the court scored severely reliability of the photographs. No objection was made to any one of the offers, and no request was made for instruction to the jury to disregard the statements of counsel. From descriptions of the place and the abundant testimony regarding distance, the jury could get a clearer conception than it could from a mental impression of something it did not see, and which the court said might mislead. The offers were made in good faith. It is contended here the photographs should have been admitted in evidence. Therefore, there is no basis for a charge of misconduct on the part of counsel, and there is no indication the verdict was predicated on anything other than testimony which was admitted.

Complaint is made of some testimony which was admitted,

showing plaintiff was rendered incapable by his injuries of indulging, as was his habit, in physical activities of an able-bodied person other than mere work, and had worried about his condition. If the testimony had any effect on the verdict it increased the amount of recovery. No complaint regarding amount of recovery was made in the motion for new trial, and the error in admitting the testimony, if any—a matter not decided—was waived.

A contention that a demurrer to plaintiff's evidence should have been sustained is without any merit.

Complaint is made that the court erred in limiting the number of defendant's witnesses on the subject of where the Dilley truck stood when it burned. An account of what occurred will not be given. It is sufficient to say defendant does not name any witness he desired to examine, and did not produce at the hearing on the motion for a new trial the testimony of any witness he was prevented from examining. Therefore, the error, if any, was waived.

It is contended the court erred in its instructions to the jury. After defining negligence, the court gave the following instruction:

"It is the law of this state that any person using the public highways and driving a motor vehicle thereon shall keep to the right of the center of the traveled portion of such highway; and it is also the duty of the driver of a motor vehicle upon any of the public highways to operate the same at a rate of speed such as not to endanger the life or limb of any other person in the lawful use of such highway, having regard for the condition, use and traffic of said highway. Any person disregarding these usual and ordinary provisions of the use of a highway would be guilty of negligence, and if injury to another is caused by the negligence of one, then such other would be entitled to damages."

It is said the opening sentence of this instruction, together with the application of it later in the instruction, is not the law. In the instructions the court frequently used the expressions "the right side of the road" and "the wrong side of the road."

Speaking generally, an automobile driver may use any portion of the highway he desires. The privilege, however, is a qualified privilege, which he may not exercise if by so doing he would endanger others, and it is the law of the road that the driver of an automobile should keep to the right when meeting and passing another automobile. (*Giles v. Ternes,* 93 Kan. 140, syl. ¶ 4, 143 Pac. 491.) That was what this lawsuit was about. Subsequent instructions focused attention of the jury on the conduct of the two truck drivers, in relation to the accident under investigation, and the instructions could not have been misleading.

It is said the quoted instruction did not mention contributory negligence, and of course it did not. That subject was reserved for later treatment.

It is said the instructions to the jury were defective, in that they did not use the term "proximate" before the word "cause," in defining defendant's liability, and the jury was advised that if defendant did not use proper care, and his failure to do so caused plaintiff's injuries, plaintiff would be entitled to judgment.

In discussing the subject of contributory negligence as defeating recovery by plaintiff, the term "proximate cause" was used.

If the court had made "proximate cause" prominent, the court would have been obliged to define the term, and would have found itself in the welter of words described by Dean Green:

"The tendency of lawyers or any other class of experts is toward involvement. They instinctively feel that appropriate raiment is needed in which to garb the idea. Lawyers employ the terminology of their science lavishly. Frequently the idea is lost in its dress. This has happened in dealing with this simplest of inquiries. 'Cause,' although irreducible in its concept, could not escape the ruffles and decorations so generously bestowed: remote, proximate, direct, immediate, adequate, efficient, operative, inducing, moving, active, real, effective, decisive, supervening, primary, original, contributory, ultimate, concurrent, *causa causans,* legal, responsible, dominating, natural, probable, and others." (Green, Proximate Cause, 135.)

In the chapter on Causation in the Restatement, Torts, the term "proximate cause" is not used, the term "legal cause" is used, and the essentials of the substantial factor doctrine relating to negligent cause of harm are adopted. Section 431 and *Comment b* read:

"The actor's negligent conduct is a legal cause of harm to another if—

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

"*Comment b.* In many cases the question before the court is whether the actor's negligence was in fact the cause of the other's harm—that is, whether it had any effect in producing it—or whether it was the result of some other cause, the testimony making it clear that it must be one or the other, and that the harm is not due to the combined effects of both. In such a case the question whether the defendant's negligence has a substantial as distinguished from a merely negligible effect in bringing about the plaintiff's harm, does not arise if the testimony clearly proves that the harm is from a cause other than the actor's negligence. Indeed, the testimony often makes it clear that, if the defendant's conduct had any effect, the effect was substantial. It is only where the evidence permits a reasonable finding that the defendant's conduct had some effect that the question whether the effect was substantial rather than negligible becomes important."

If each truck driver had kept to his own side of the road, there would have been no collision. The conduct of one or the other brought about the harm which plaintiff suffered, and was cause to the mind of the jury. If defendant's conduct had any effect, the effect was substantial, and so far as defendant's conduct was concerned, the word "cause" needed no ruffles or decorations.

The judgment of the district court is affirmed.