TSCHIRHART v PETHTEL

1. APPEAL AND ERROR—VERDICT—DIRECTED VERDICT.

The Court of Appeals, when reviewing a directed verdict in favor of a defendant, is required to view the facts and all legitimate inferences therefrom in the light most favorable to the plaintiff.

2. EVIDENCE—NEGLIGENCE—MALPRACTICE—EXPERT TESTIMONY— STANDARD OF CARE.

Expert testimony is required in a malpractice case to establish a standard of the profession by which the jury may be guided in judging the claims of the plaintiff and to establish whether the defendant breached that standard.

3. EVIDENCE—CONTRACTS—CHIROPRACTORS—EXPRESS PROMISE—JURY QUESTION.

It is not necessary, to support a plaintiff patient's claim in contract against a chiropractor, to plead or prove the existence of a special contract; it is only necessary that testimony be adduced from which the jury could properly find the existence of an express promise to cure or effect a specific result which was in the reasonable contemplation of the parties and relied on by the plaintiff, and the determination of whether an express promise was made lies solely with the fact-finder.

Appeal from Wayne, Elza H. Papp, J. Submitted Division 1 December 5, 1974, at Detroit. (Docket No. 17677.) Decided June 9, 1975. Leave to appeal denied, 395 Mich —.

Complaint by Leo and Ruth Tschirhart against Donald L. Pethtel for damages for malpractice, breach of contract, and fraud. Directed verdict and

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 547, 886.
[2] 31 Am Jur 2d, Expert and Opinion Evidence §§ 10, 19.
[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 213.

judgment for defendant. Plaintiff appeals. Affirmed in part, reversed in part, and remanded.

*Goldsmith, Yaker & Goldsmith,* for plaintiffs.

*Harry Riseman,* for defendant.

Before: J. H. Gillis, P. J., and V. J. Brennan and Peterson,* JJ.

V. J. Brennan, J. In January of 1970, plaintiff, Leo Tschirhart, was experiencing some pain in his back so he sought the assistance of his family physician, Dr. Harold Podolsky. After several visits Dr. Podolsky informed plaintiff that he believed him to be suffering from arthritis and that a conservative plan of treatment was going to be followed. Pain medication and muscle relaxants were prescribed but plaintiff apparently obtained no relief. Plaintiff thereupon contacted defendant, a licensed chiropractor, to see if he could be of any help. Plaintiff had earlier received a brochure through the mail from defendant outlining the advantages of the chiropractic method of treatment and containing testimonials from certain of his prior patients, some of whom claimed to have had disc problems and arthritis satisfactorily treated by defendant. Plaintiff first saw defendant on March 6, 1970 and thereafter on a regular basis until May 29, 1970. Initially, defendant's treatment of plaintiff proceeded satisfactorily. Plaintiff testified that after three weeks of treatment he began to respond, with the pain he had been experiencing in his right arm, shoulder and shoulder blade diminishing. In early May, while still receiving treatment, plaintiff began to paint the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

breezeway on his house. At about this same time plaintiff began experiencing an increase in the amount of pain he was suffering. On May 29, 1970, plaintiff visited defendant complaining about the increased pain and stating that the pain was now in his left arm also. Although the precise manner in which defendant proceeded to handle plaintiff on this occasion is in dispute, it nevertheless appears that while plaintiff was on the table he experienced a "flash of light in his brain", a shock throughout his body and numbness all over. Plaintiff was thereupon taken to the hospital and subsequently underwent two surgical operations for a herniated disc.

On December 23, 1970, plaintiff instituted this action against defendant alleging malpractice, breach of contract, and fraud. Plaintiff's wife, Ruth Tschirhart, also brought an action against defendant for loss of consortium. Plaintiff subsequently filed two amended complaints refining the allegations contained in his first complaint. On the day trial began the trial judge dismissed the count alleging fraud and trial proceeded on the other two counts. Plaintiff presented no expert witnesses of his own, relying, instead, on the testimony of defendant to establish the requisite standard of care and a breach thereof. At the conclusion of all the proofs, the trial judge granted defendant's motion for a directed verdict. It is from this decision that plaintiff now appeals.

Plaintiff first contends that the trial court erred in granting defendant's motion for a directed verdict as to the count of malpractice. In reviewing such a claim this Court is required to view the facts, and all legitimate inferences therefrom, in the light most favorable to plaintiff. *Heins v Synkonis,* 58 Mich App 119; 227 NW2d 247 (1975),

*Daniel v McNamara,* 10 Mich App 299; 159 NW2d 339 (1968).

On this appeal plaintiff claims that sufficient evidence of malpractice was presented to permit this issue to go to the jury. Plaintiff claims that the evidence presented at trial establishes the breach of four separate duties: (1) to determine whether plaintiff's condition was one he could treat; (2) to follow the appropriate chiropractic standards of care in treating plaintiff; (3) to warn plaintiff not to engage in certain activity; and (4) to warn plaintiff of the risks of treatment.

After reviewing the evidence presented in this case in the light most favorable to plaintiff, we find that sufficient evidence of malpractice was presented on the issue of whether defendant was negligent in failing to inform plaintiff that his condition was one which was not amenable to chiropractic treatment. With respect to the other alleged acts of malpractice, however, we find, as did the trial judge, that the evidence presented at trial was insufficient to allow the case to go to the jury.

When defendant first saw plaintiff he made several observations about plaintiff's condition, one of which was that there was the possibility of a herniated disc. At trial defendant testified that he performed a compression test to determine whether plaintiff did, in fact, have a herniated disc and that the results of this test were negative. Defendant further testified that he informed plaintiff that he did not have a herniated disc and also testified that he did not undertake to treat herniated discs. In his deposition, however, defendant stated that on several occasions, near the beginning of the adjustments, he suggested to plaintiff that he seek the assistance of a physician because

he might have a herniated disc and that his initial tests showed weak disc material or a possible herniation. Plaintiff, on the other hand, testified that defendant never informed him that he should seek the advice of a physician with respect to the possibility of a herniated disc. While the facts in this regard are clearly in dispute, viewing them in the light most favorable to plaintiff, the jury could properly have found that defendant was aware of the fact that plaintiff had a possible herniated disc, a malady defendant stated he did not treat, and that he failed to inform plaintiff of this fact and refer him to a physician. Defendant's negligence in this respect, if proven to the satisfaction of the jury, would sustain plaintiff's charge of malpractice and entitle him to recover damages for any injuries which were proximately caused by such malpractice. *Janssen v Mulder,* 232 Mich 183; 205 NW 159 (1925).

With respect to the acts of malpractice which allegedly occurred on the day plaintiff was injured, plaintiff argues that the jury could properly have inferred that stresses from manipulation could have caused the injury. This, however, is not sufficient to establish a jury-submissible case of malpractice. In order for plaintiff to have sustained his burden of proof on this issue of malpractice, he was required to establish, by expert testimony, that defendant breached the standard of care required of him. *Janssen v Mulder, supra.* See *Lince v Monson,* 363 Mich 135; 108 NW2d 845 (1961), *Marchlewicz v Stanton,* 50 Mich App 344; 213 NW2d 317 (1973), *lv den,* 391 Mich 813 (1974). This he failed to do. The only expert testimony offered on this point was that of defendant who stated that what he did on the day in question conformed to the standard practice of chiropractors.

Plaintiff similarly failed to present a jury-submissible case with respect to his claims that defendant was negligent in failing to warn plaintiff not to engage in a certain activity and in failing to warn him of the risks of treatment. While plaintiff's testimony as to the information imparted by defendant to plaintiff, if believed by the jury, might well have established a violation of chiropractic standards, such a determination could not have been made on the present record. Our examination of the record in the case at bar reveals the complete absence of any expert testimony establishing a standard of the profession by which a jury could be guided in judging such claims and we refuse to infer such a standard as plaintiff would have us do. Such standards are required to be established by expert testimony. See *Marchlewicz v Stanton, supra.*

Plaintiff next contends that the trial court erred in granting defendant's motion for a directed verdict on the contract claim. We agree. In *Marchlewicz v Stanton, supra,* at 348–349; 213 NW2d at 319, this Court said:

"In *Guilmet v Campbell,* 385 Mich 57, 69; 188 NW2d 601, 606–607 (1971), a contract and negligence action against a doctor, our Supreme Court, in affirming the trial court's denial of defendant's motion for judgment notwithstanding the verdict, stated:

" 'What was said, and the circumstances under which it was said always determines whether there was a contract at all and if so what it was. These matters are always for the determination of the fact finder.'

"It is not necessary, to support plaintiff's claim in this regard, that the existence of a 'special contract' be pleaded or proved. It is only necessary that testimony be adduced from which the jury could properly find the existence of an 'express promise to cure or effect a specific result which was in the reasonable contempla-

tion' of the parties and relied on by plaintiff. *Guilmet v Campbell, supra.*"[1]

In the case at bar plaintiff specifically pleaded breach of contract and testified at trial that he was told by Dr. Pethtel that his problem could be corrected and that it would take about seven weeks. Plaintiff stated that he thereupon said "fine" and asked when treatments would start. Under *Guilmet* and *Marchlewicz* the issue of whether an express promise was made lies solely with the fact-finder, who, of course, is to decide the question after being properly apprised of the applicable law. The trial judge erred, therefore, in removing this issue from the jury's consideration.

Lastly, plaintiff has presented two additional issues for our consideration but has failed to provide this Court with any citation of authority in support of the claims. We, nevertheless, have considered these contentions and find them to be without merit.

Affirmed in part; reversed in part. Remanded for a new trial.

---

[1] By 1974 PA 343, the statute of frauds in this state, MCLA 566.132; MSA 26.922 was amended to render void any "agreement, promise, contract or warranty of cure relating to medical care or treatment" which is not in writing and signed by the party to be charged or some person authorized by him. 1974 PA 343 took effect on December 21, 1974 but, of course, has no application to contracts entered into before this date.