No. 56,325

CHRISTINE ROBERSON, *Appellant*, v. G. ED COUNSELMAN, *Appellee*.

(686 P.2d 149)

Opinion filed July 13, 1984.

*Janet Jo Smith*, of Law Offices of Jerry K. Levy, P.A., of Topeka, argued the cause and was on the brief for appellant.

*Thomas E. Wright*, of Fisher, Ochs, Heck and Wright, P.A., of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Plaintiff Christine Roberson, the widow and heir-at-law of Richard C. Roberson, deceased, brings this professional malpractice action against G. Ed Counselman, a chiropractor. Plaintiff contends defendant was professionally negligent in failing to recognize his patient (the deceased) was experiencing symptoms consistent with those of acute heart disease and in failing to refer the patient for appropriate medical treatment. Plaintiff contends this negligence substantially reduced deceased's chance of surviving the heart attack which took his life within hours after he had received chiropractic treatment. The district court held plaintiff had failed to meet her burden of proof to show it was more likely than not defendant's conduct was a substantial factor in the causation of the injury and sustained defendant's pretrial motion for summary judgment. Plaintiff appeals therefrom.

The applicable rules relative to summary judgment were reiterated in *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 662 P.2d 1203 (1983), as follows:

"Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought." Syl. ¶ 1.

"A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist." Syl. ¶ 2.

"*When a motion for summary judgment is filed, a mere surmise or belief by the trial court, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing that party his day in court.*" Syl. ¶ 3. (Emphasis supplied.)

"*When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment.*" Syl. ¶ 4. (Emphasis supplied.)

A summary of the facts, in the light most favorable to the plaintiff, is as follows. Richard C. Roberson was initially seen by defendant Counselman in December 1972. At that time he complained of and was treated for a back sprain. Approximately a week later Mr. Roberson became ill. Plaintiff then contacted defendant and advised him she believed her husband had a heart problem and requested that defendant urge her husband to see a heart specialist. Defendant made arrangements for Mr. Roberson to be seen by Dr. Robert Roeder, a Topeka cardiologist where he was diagnosed as having suffered a heart attack and was hospitalized.

Under Dr. Roeder's supervision, a continuing course of treatment, including medication, was undertaken and Mr. Roberson was ultimately released from the hospital. On January 12, 1973, Mr. Roberson was rehospitalized complaining of chest discomfort. Three years later, in May 1976, Mr. Roberson was again admitted to the hospital with similar complaints. During the 1976 hospitalization Mr. Roberson underwent diagnostic coronary arteriograms to determine the state of his cardiac circulation in relation to his coronary arteries. The tests revealed the right coronary was totally blocked while there was a seventy percent narrowing in the left anterior descending to a forty percent narrowing in the circumflex. Also during the 1976 hospitalization, x-rays of Mr. Roberson's back revealed he had a mild degenerative arthritic change of the lumbar and cervical regions of the spine. All these findings were presented to Mr. Roberson.

The last time Dr. Roeder saw Mr. Roberson was on January 24, 1980, where he exhibited stable angina pain.

On July 28, 1980, Mr. Roberson appeared at defendant's office complaining of "pain in the left shoulder area and left side causing hard breathing and chest ache." Defendant, with knowledge of the decedent's prior heart history, diagnosed Mr. Roberson as suffering from a neuromuscular difficulty and gave two chiropractice adjustments which were described as an anterior move for his upper back and an intersegmental traction. At no time during the July 28th consultation did the defendant advise Mr. Roberson he should consult a medical physician about his heart. Throughout the evening of July 28, Mr. Roberson's condition deteriorated and plaintiff became very concerned about her husband's health. Plaintiff urged her husband to seek immediate medical treatment. In her deposition, plaintiff testified the following exchange occurred between her husband and herself:

"A. [Christine Roberson] He said that, 'Dr. Counselman is a regular doctor like any other doctor.' He said, 'And I have told Ed [Counselman] exactly how I feel, I have told him that I had shortness of breath, that my chest hurt, that my shoulder hurt; and he said, "Don't worry about it, Dick, it's not your heart, it's not your heart, it's a ligament what's out but it's pressing on a nerve." ' And he said, 'Christine, after all, the man knows what he's talking about, he gives me every symptom that I have.' And I threatened to call an ambulance and he said, 'You'll feel pretty foolish when I don't go. After all, Counselman is a doctor, he knows what he's talking about.'
"Q. [Mr. Wright, defendant's counsel] And he wouldn't take your advice?
"A. He would not.
"Q. He wouldn't take your advice and let an ambulance be called?
"A. He would not."

Plaintiff and her husband argued over his medical condition. Later in the evening, the following conversation occurred:

"A. It ended that we talked to each other again but I was enraged, I told him that he should see Dr. Roeder, I told him, I even told him, I said, 'All right, even if it wouldn't be your heart, for God's sake if you have that much pain, then let's go to a regular doctor, maybe he has to put you in traction if it's really your back.'
"Q. What did he say?
"A. He said, 'Dr. Counselman said I'm supposed to feel this way.' He said, 'It's my back, I'm seeing him again on Wednesday, why don't you just lay off me.' "

A few hours later Mr. Roberson died of a heart attack in his home, without medical attention. He was 51 years of age at the time of his death.

Plaintiff presented three expert witnesses whose depositions were taken during discovery. Their testimony, as pertinent to the issue before us, may be summarized as follows:

1. Dr. Malcolm W. Haber (chiropractor) stated that Dr. Counselman had a duty to refer a patient with Mr. Roberson's symptoms to a medical specialist and the failure to do so constituted a breach of that duty.

2. Dr. Richard Roeder (cardiologist) stated with in-hospital treatment for his heart attack, Mr. Roberson had a nineteen percent chance of dying. Without such treatment the mortality rate is twenty-five percent. Therefore, the failure to receive proper medical treatment cost Mr. Roberson a six percent chance of survival.

3. Dr. Lillian Rodriquez-Tocker (cardiologist) stated with proper medical treatment Mr. Roberson had a forty percent chance of survival and that without such treatment his chance of survival was zero percent.

The district court in sustaining defendant's motion for summary judgment reasoned:

"A mere possibility of causation is not enough to meet plaintiff's burden of producing evidence; plaintiff must show that it was more likely than not defendant's conduct was a substantial factor in bringing about the harm in order for plaintiff's case to be submitted to the trier of the fact. Prosser, *Law of Torts* sec 41 (4th ed. 1971); *Restatement (Second) of Torts* sec. 433B comments a & b (1965).

. . . .

"The expert medical testimony upon which plaintiff relies is not sufficient to meet plaintiff's burden of proof on causation. Dr. Rodriquez-Tocker's testimony that plaintiff's decedent would have had a forty percent chance of survival in the hospital does not show that it is more likely than not the defendant's conduct caused the death of plaintiff's decedent. Likewise, Dr. Roeder's testimony that Mr. Roberson would have had a six percent better chance of survival if he had gone to the hospital is not enough to fulfill plaintiff's burden of proof on causation. The third expert witness, Dr. Haber, declined to state that defendant's failure to refer Mr. Roberson to a cardiologist was the cause of his death.

. . . .

"The court concludes, as a matter of law, that there is insufficient proof contained in the pretrial discovery record that defendant's conduct was a cause in fact of plaintiff's injuries. Accordingly, the evidence is clearly insufficient to submit the issue of causation to the jury with respect to plaintiff's claim against defendant."

The sole issue on appeal is whether the district court erred in concluding the evidence on causation was insufficient to constitute a submissible jury question.

*Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86 (1983), contains a general review of the Kansas law relative to medical malpractice. A physician has the duty to exercise reasonable and ordinary care and diligence. The particular decision and acts required of the physician in fulfilling the duty will vary with the circumstances of the patient's situation and the medical specialty of the physician. 234 Kan. at 490. The rules of law pertaining to medical malpractice are applicable to chiropractors. See *Hinthorn v. Garrison*, 108 Kan. 510, 196 Pac. 439 (1921); *Case v. Vearrindy*, 339 Mich. 579, 64 N.W.2d 670 (1954). Like physicians (see Annot., Malpractice: Physician's Failure to Advise Patient to Consult Specialist or One Qualified in a Method of Treatment which Physician is not Qualified to Give, 35 A.L.R.3d 349), a chiropractor may be liable for failing to refer a patient to a medical practitioner. Annot., Chiropractor's Liability for Failure to Refer Patient to Medical Practitioner, 58 A.L.R.3d 590; 24 Am. Jur. Proof of Facts, Chiropractic Malpractice § 21, p. 467; 61 Am. Jur. 2d, Physicians, Surgeons, Etc. § 233; *Mostrom v. Pettibon*, 25 Wash. App. 158, 607 P.2d 864 (1980); *Tschirhart v. Pethtel*, 61 Mich. App. 581, 233 N.W.2d 93, *appeal denied* 395 Mich. 774 (1975); *Salazar v. Ehmann*, 505 P.2d 387 (Colo. App. 1972), 58 A.L.R.3d 585; *Ison v. McFall*, 55 Tenn. App. 326, 400 S.W.2d 243 (1964); *Ritter v. Sivils*, 206 Or. 410, 293 P.2d 211 (1956).

It should be emphasized that the summary judgment herein was *not* granted on the basis plaintiff's evidence was insufficient to establish the duty owed or the breach thereof. Indeed, the deposition of Dr. Haber was sufficient to establish the duty and the breach thereof for purposes of withstanding a summary judgment motion. Rather, the district court concluded there was insufficient evidence that the alleged breach of Dr. Counselman's duty to Mr. Roberson caused the man's death. Therefore, the issue before us relates wholly to *causation*—not whether Dr. Counselman was negligent in his treatment of Mr. Roberson.

In granting the summary judgment herein the district court cited Restatement (Second) of Torts § 433B, comments *a* and *b* (1965).

"*a*. . . . [I]n civil cases, the plaintiff is required to produce evidence that the conduct of the defendant has been a substantial factor in bringing about the harm he has suffered, and to sustain his burden of proof by a preponderance of the evidence. This means that he must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about

the harm. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

## Comment *b* declares:

"*b*. The plaintiff is not, however, required to prove his case beyond a reasonable doubt. He is not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable men may conclude that it is *more probable* that the event was caused by the defendant than that it was not. *The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise.* If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. *In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case.*" (Emphasis supplied.)

Comment *b* concludes by providing a hypothetical drowned child scenario which appears analytically applicable in the instant action.

"Thus when a child is drowned in a swimming pool, no one can say with absolute certainty that a lifeguard would have saved him; but the common experience of the community permits the conclusion that the guard would more probably than not have done so, and hence ·that the absence of the guard has played a substantial part in bringing about the death of the child. *Such questions are normally for the jury, and the court may seldom rule on them as matters of law.*" (Emphasis supplied.)

Dean Prosser, also cited by the district court, is consistent with the Restatement (Second) of Torts in holding causation must be established by the so-called "substantial factor" test. Prosser, Law of Torts § 41, pp. 240-41 (4th ed. 1971). Prosser is critical of the "but for" test of causation. Prosser, pp. 238-40. Like the Restatement (Second) of Torts, Prosser argues whether the defendant's conduct was a substantial factor in bringing about the plaintiff's injury "is for the jury to determine, unless the issue is so clear that reasonable men could not differ." Prosser, p. 240.

57 Am. Jur. 2d, Negligence § 147, at pp. 503-04, states:

"The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a *substantial factor* in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm. To hold a tortfeasor liable for the injuries which result in the ordinary course of events from his negligence, it is generally sufficient if his negligent conduct was a substantial factor in bringing about the

injuries. The word 'substantial' is used in the Restatement, Torts 2d in the sense that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense.' It has been held that *in using the term 'substantial factor' in a charge to the jury, the substance* of the Restatement definition *must be explained* in terms likely to be understood by laymen *in order to avoid any misconception that the negligence referred to must be 'substantial' in degree."* (Emphasis supplied.)

As the preceding passage from Am. Jur. 2d reveals, the Restatement (Second) of Torts discusses and defines "substantial factor" as it relates to causation in negligence actions. Initially, Restatement (Second) of Torts § 430 (1965) provides in order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also the negligence of the actor be the legal cause of the other's harm. Restatement (Second) of Torts § 431 (1965) defines "legal cause";

"The actor's negligent conduct is a legal cause of harm to another if
(a) his conduct is a *substantial factor* in bringing about the harm, and
(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." (Emphasis supplied.)

Comment *a*, following § 431, proclaims in order to be a legal cause of another's harm it is not enough the harm would not have occurred had the actor not been negligent—a rejection of the "but for" test. Rather, the negligence must also be a substantial factor in bringing about the plaintiff's harm.

"The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." Restatement (Second) of Torts § 431, Comment *a*, p. 429 (1965).

In *State Highway Comm. v. Empire Oil & Ref. Co.,* 141 Kan. 161, 40 P.2d 355 (1935), the court defined legal cause as the invasion of some legally protected interest of another for which the actor is held responsible in law for the harm. Further, "the act or omission must be a *substantial factor* in bringing about the harm (see § 431)." 141 Kan. at 165. (Emphasis supplied.)

In *Adams v. Casebolt,* 145 Kan. 3, 63 P.2d 927 (1937), at p. 7,

this court, relying upon Restatement of Torts § 431, comment *b* (1934), said:

" '. . . [T]he testimony often makes it clear that, if the defendant's conduct had any effect, the effect was substantial. It is only where the evidence permits a reasonable finding that the defendant's conduct had some effect that the question whether the effect was substantial rather than negligible becomes important.' "

*Cole v. Shell Petroleum Corp.*, 149 Kan. 25, 86 P.2d 740 (1939), at p. 37, saw this court, in relying upon authority, noting "[c]ausation is a matter of fact."

As is evident from the preceding discussion, causation is easier stated than explained. The legal treatises on causation are voluminous. A few good examples are: Delgado, *Beyond Sindell: Relaxation of Cause-In-Fact Rules for Indeterminate Plaintiffs*, 70 Calif. L. Rev. 881 (1982); King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L. J. 1353 (1981); Danner & Sagall, *Medicolegal Causation: A Source of Professional Misunderstanding*, 3 Am. J. L. & Med. 303 (1977); Note, *Expert Testimony on Causation in a Wrongful Death Case: Should "Reasonable Medical Certainty" be Necessary to Make a Submissible Case?* 36 Mo. L. Rev. 127 (1971); 3 Am. Jur. Proof of Facts, Causation—Medical Opinion, p. 161; Annot., Proximate Cause in Malpractice Cases, 13 A.L.R.2d 11.

To iterate, in the case before us, for purposes of withstanding the summary judgment motion, negligence on the part of Dr. Counselman was adequately established. In essence, the district court held that, to establish a submissible jury issue of causation, plaintiff must show that, but for defendant's negligence, deceased would have had a better than even chance of surviving the heart attack. The plaintiff's evidence in its most favorable light showed only a forty percent chance of survival. This, the district court concluded, was insufficient.

Plaintiff's claim centers on defendant's negligence having reduced or obliterated her husband's chance of survival. While such action frequently arises within the context of a wrongful death case, the complainant is really seeking redress not for the death but for the deprivation of the chance to survive. Delgado, 70 Calif. L. Rev. at 889. It should be noted that there is no issue before us relative to by what legal capacity the action is brought and such is not germane to the issue to be decided. The case does appear, however, to be the first deprivation-of-the-chance-

to-survive action before a Kansas appellate court. This type of action has been before a number of appellate courts in other jurisdictions.

In *Hernandez v. Clinica Pasteur, Inc.*, 293 So. 2d 747 (Fla. Dist. Ct. App. 1974), Mr. Hernandez visited defendant clinic with symptoms which should have resulted in an electrocardiogram being administered, but which was not done. He was diagnosed as suffering from gastric distress. The patient was told he had no serious health problems and should exercise more. The patient exercised that evening and was dead by morning from a myocardial infarction. At trial a cardiologist testified Mr. Hernandez would "probably and possibly" have had a better chance of survival if he had received proper treatment at the defendant clinic. A directed verdict was entered for defendants at trial. The Florida Appellate Court reversed the directed verdict holding:

" 'Proximate cause is not a question of science or legal knowledge—it is a fact to be determined in consideration of all the circumstances. It is only when the facts are susceptible of only one inference that the question is one of law for the court. Otherwise it should be submitted to the jury.' " 293 So. 2d at 750.

Continuing:

"It further appears that *once the malpractice was established, the question of causation for the decedent's demise within hours of the malpractice was one which was properly submitted to the jury.*" 293 So. 2d at 750. (Emphasis supplied.)

Concluding:

"In the case now before us, there was evidence that appellant's decedent was at all times suffering from the condition which ultimately caused his death. The issue of proximate cause was as to whether appellees' malpractice contributed to the cause of death. *In this connection, the testimony that appellant's decedent would have had a better chance to survive if he had received prompt medical attention was sufficient to form a basis for the submission of the issue to the jury.*" 293 So. 2d at 750. (Emphasis supplied.)

*Hernandez* arose in the District Court of Appeal of Florida, *Third District.*

A different result was reached in the First District of the same appellate court. In *University Hosp. Bldg., Inc. v. Gooding*, 419 So. 2d 1111 (Fla. Dist. Ct. App. 1982), the patient had a condition when brought to the hospital which, with proper medical treatment, he had a fifty percent chance to survive. The treatment was

not given and the patient died. A verdict was rendered against the hospital. In reversing, the appellate court said:

"Causation in fact is proved by evidence that *more likely than not* defendant's negligence caused the injury. This same burden of proof applies regardless of whether the 'but for' or the 'substantial factor' test is used. The rule is stated by Prosser as follows:

" 'On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that *it is more likely than not* that the conduct of the defendant was a substantial factor in .bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, *or the probabilities are at best evenly balanced,* it becomes the duty of the court to direct a verdict for the defendant.' (emphasis added)

"The testimony of plaintiff's expert, the strongest evidence presented on plaintiff's behalf, establishes that decedent's chances of survival, given all optimum conditions and prompt efficient action, [were] at best evenly balanced and less than probable. On this state of the proof, the case should not have been submitted to the jury." 419 So. 2d at 1113-14.

Perhaps the most liberal view is expressed in *Hicks v. United States,* 368 F.2d 626 (4th Cir. 1966), which involves Virginia law. In *Hicks* a diabetic patient was taken to a navy hospital with intense abdominal pain and vomiting. Proper testing would have revealed a high obstruction. Instead the patient was diagnosed as having a minor problem and sent home, where she died. There was expert testimony the patient would have survived if. given proper treatment. The district court dismissed the action. In reversing the district court the Court of Appeals stated:

"When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. *If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable.* Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a *certainty* that the patient would have lived had she been hospitalized and operated on promptly. Harvey v. Silber, 300 Mich. 510, 2 N.W.2d 483 (1942)." 368 F.2d at 632. (Emphasis supplied.)

*Hicks* has been followed by the Maryland Court of Appeals (Maryland's highest court) in *Thomas v. Corso,* 265 Md. 84, 101-02, 288 A.2d 379 (1972).

In *Kallenberg v. Beth Israel Hosp.,* 45 App. Div. 2d 177, 357

N.Y.S.2d 508 (1974), *aff'd* 37 N.Y.2d 719, 374 N.Y.S.2d 615, 337 N.E.2d 128 (1975), the decedent was admitted to the Beth Israel Hospital for surgery. The decedent had a cerebral aneurysm. Upon admission her physician ordered she receive a specific medication to reduce her blood pressure. It was critical her blood pressure be reduced as a condition for performing surgery. The decedent never received the medication. Her blood pressure remained high and, consequently, surgery could not be performed. Ultimately the patient died when the cerebral aneurysm hemorrhaged. The evidence revealed the decedent did not reach the point where nothing could be done for her until six days after admission. Expert testimony established had the decedent been promptly, properly, energetically and adequately treated, she would have had at least a twenty percent survival chance, but no more than forty percent. 45 App. Div. 2d at 179. If the decedent had received medication, but had not undergone surgery, she would have had a two percent chance of survival. 45 App. Div. 2d at 180. Even with this less than evenly balanced survival chance, the New York appellate court, in affirming a jury verdict for the plaintiffs, said:

"*The question of proximate cause is a jury question,* and a jury alone may weigh conflicting evidence and determine the credibility of witnesses and the weight to be accorded expert testimony." 45 App. Div. 2d at 180. (Emphasis supplied.)

In *Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981), plaintiff alleged the misdiagnoses and delay in treating her for breast cancer resulted in her life being impaired and shortened, and caused financial loss. The trial court, in charging the jury on causation, said proximate cause is that cause which in direct and continuous sequence uninterrupted by any intervening cause produces the result and without which it would not occur. 494 Pa. at 415. The jury returned a verdict in favor of the defendants. On appeal the Pennsylvania Supreme Court reversed, holding the lower court had erred in charging the jury on causation.

"Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a *substantial factor* in bringing about the harm inflicted upon a plaintiff. Pennsylvania law has long recognized that this *substantial factor* need not be, as the trial court incorrectly charged, the only factor, i.e., 'that cause which . . . produces the result.' *Gradel v. Inouye,* 491 Pa. 534, 542, 421 A.2d 674, 678 (1980); *Hamil v. Bashline,* 481 Pa. at

266, 392 A.2d at 285; *Majors v. Brodhead Hotel,* 416 Pa. 265, 273, 205 A.2d 873, 878 (1965). A plaintiff need not exclude every possible explanation, and 'the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence.' *Majors v. Brodhead Hotel,* 416 Pa. at 273, 205 A.2d at 878." 494 Pa. at 416.

In *Jones* the Pennsylvania court applied liability under Restatement (Second) of Torts § 323 (1965), which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) *his failure to exercise such care increases the risk of such harm,* or

(b) the harm is suffered because of the other's reliance upon the undertaking." (Emphasis supplied.)

The Pennsylvania court specifically relied upon subsection (a). According to the Pennsylvania court, once a plaintiff demonstrated defendant's acts or omissions, in a situation to which § 323(a) applied, increased the risk of harm to another, such evidence would furnish a basis for a factfinder *to go further* and find that such increased risk was in turn a *substantial factor* in *bringing about the resultant harm.* To the *Jones* court the necessary proximate cause would have been made out if the jury saw fit to find causation in fact. According to the Pennsylvania court, ". . . medical opinion need only demonstrate, with a reasonable degree of medical certainty, that a defendant's conduct *increased the risk* of the harm actually sustained, and the jury then must decide whether that conduct was a substantial factor in bringing about the harm." 494 Pa. at 417. Recently, in *Circle Land & Cattle Corp. v. Amoco Oil Co.,* 232 Kan. 482, 490, 657 P.2d 532 (1983), this Court adopted Restatement (Second) of Torts § 323 (1965).

*Clark v. United States,* 402 F.2d 950 (4th Cir. 1968), applying Virginia law, involved allegations the physicians had been negligent in delaying use of proper and standard diagnostic procedures to identify the patient's illness and the delay was the cause of the loss of a kidney. The trial court entered judgment for plaintiff and the United States Government appealed, contending lack of causation. The Fourth Circuit Court of Appeals, in affirming the lower court, commented:

"The district judge, it is true, said, that no expert could testify 'with any probable

degree of certainty' that earlier action would have saved Mrs. Clark's kidney, but we know of no court that requires a plaintiff to prove causation to a certainty or even to 'negative entirely the possibility that the defendant's conduct was not a cause.' Prosser, Torts § 41 at 246 (3d ed. 1964). It appears to be settled in Virginia that the question of causation is for the jury with only the admonition that 'if the proof leaves it equally probable that a bad result may have been due to a cause for which the defendant was not responsible as to a cause for which he was responsible the plaintiff cannot recover.' Reed v. Church, 175 Va. 284, 8 S.E.2d 285, 288 (1940). The district court found in the instant case an 'indicated probability that an earlier operation to repair the ureter may have saved the kidney.' We think such a finding is clearly adequate under the law of Virginia." 402 F.2d at 953-54. (Emphasis supplied.)

Perhaps the most rigid position is expressed in *Cooper v. Sisters,* 27 Ohio St.2d 242, 56 Ohio Op.2d 146, 272 N.E.2d 97 (1971). In *Cooper,* plaintiff's minor son was involved in a bicycle-truck collision. Improper emergency room procedures failed to disclose a major head injury. The child was released and died the following morning. One expert testified death had been almost certain without proper treatment but declined to speculate on the percentage of chance of survival with proper treatment. Another expert placed survival chances with proper treatment "around" fifty percent. The trial court entered judgment for the defendants. In affirming, the Ohio Supreme Court stated:

"A rule, which would permit a plaintiff to establish a jury question on the issue of proximate cause upon a showing of a 'substantial possibility' of survival, in our judgment, suffers the same infirmity as a rule which would permit proof of a 'chance of recovery' to be sufficient. While the substantial possibility concept appears to connote a weightier burden than the chance of recovery idea, both derogate well-established and valuable proximate cause considerations. *Traditional proximate cause standards require that the trier of the facts, at a minimum, must be provided with evidence that a result was more likely than not to have been caused by an act, in the absence of any intervening cause.*

"Lesser standards of proof are understandably attractive in malpractice cases where physical well being, and life itself, are the subject of litigation. The strong intuitive sense of humanity tends to emotionally direct us toward a conclusion that in an action for wrongful death an injured person should be compensated for the loss of any chance for survival, regardless of its remoteness. However, we have trepidations that such a rule would be so loose that it would produce more injustice than justice. Even though there exists authority for a rule allowing recovery based upon proof of causation by evidence not meeting the standard of probability, we are not persuaded by their logic. See *Craig v. Chambers, supra* (17 Ohio St. 25[3] [1867]); *Hicks v. United States, supra* (368 F.2d 626 [4th Cir. 1966]); *Neal v. Walker* (1968), 426 S.W.2d 476; *Rogers v. Kee* (1912), 171 Mich. 551, 137 N.W. 260, quoting from *Craig v. Chambers, supra; Burk v. Foster,* (1902), 114 Ky. 20, 69 S.W. 1096. The following authorities appear to require the

establishment of proximate cause by evidence of probability: *Harvey v. Silber* (1942), 300 Mich. 510, 2 N.W.2d 483; *Schuler v. Berger* (1967), 275 F. Supp. 120; *Walden v.. Jones* (Ky. 1969), 439 S.W.2d 571 (distinguishing *Neal v. Walker, supra*); *Connellan v. Coffey* (1936), 122 Conn. 136, 187 A. 901.

"We consider the better rule to be that in order to comport with the standard of proof of proximate cause, plaintiff in a malpractice case must prove that defendant's negligence, *in probability,* proximately caused the death." 27 Ohio St. 2d at 251-52. (Emphasis supplied.)

In *Daniels v. Hadley Memorial Hospital,* 566 F.2d 749 (D.C. Cir. 1977), a Mr. Horace Miller went to a hospital emergency room for treatment for abrasions he received following a fall from his bicycle. During treatment Mr. Miller received a penicillin shot and fifteen to twenty minutes later was allowed to leave. About ten minutes after being discharged, he was found in the hospital parking lot suffering from an anaphylactic reaction to the penicillin. Thirty-four minutes after he had been rushed back into the emergency room, Mr. Miller was dead. In a wrongful death action against the hospital the plaintiff alleged when the hospital staff was treating the decedent for the anaphylactic reaction it had a duty to provide both oxygen and adrenalin as quickly as possible (for proper ventilation) and the staff's failure to do so effectively eliminated whatever chance Mr. Miller had of surviving. 566 F.2d at 753. Plaintiff's expert testimony established while Mr. Miller had been in a grave condition when he was rushed back into the emergency room, he still had a significant chance of recovery if properly treated. His condition was capable of being medically corrected. Death was possible, but not inevitable. According to one expert there was an appreciable chance of survival in anaphylactic reaction to penicillin cases although fifteen to twenty-five percent of the victims ultimately die. As each moment passed the chances of survival diminished. The plaintiff's expert witness testified the hospital staff's failure to supply proper ventilation "significantly diminished" Mr. Miller's chances of survival. 566 F.2d at 758. The trial court found the hospital staff had been negligent in its emergency treatment of the decedent, but such treatment had not been the proximate cause of his death. 566 F.2d at 751. The plaintiff appealed and the United States Court of Appeals, District of Columbia Circuit, reversed and remanded the case.

In reversing the lower court the federal appellate court wrote:

"In determining that there was no causal connection between inadequate ventilation and Mr. Miller's death, the District Court applied the 'substantial factor' test. This is the appropriate test for causation in cases, such as this, where the harm appears to have been brought about by two or more concurrent causes. Under this test, the plaintiff must show that the defendant's deviation from the standard of care was a 'substantial factor' in bringing about the harm complained of. This test has been applied in circumstances similar to those presented here, involving the medical mismanagement of a patient's already potentially fatal condition. In *Hicks v. United States* the court dismissed defendant's contention that proximate causation had not been shown because, although the negligent diagnosis had prevented the application of proper therapy, '. . . even if surgery had been performed immediately, it is mere speculation to say that it would have been successful':

" '. . . [I]t does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass.'

The *Hicks* decision, and the cases which have followed it, illustrate that *there are at least two important factors relevant to the issue of causation in cases involving negligent treatment of a potentially fatal condition: first, the patient's chances of survival if properly treated according to medical procedures generally recognized as appropriate under the circumstances; and second, the extent to which the patient's chances have been reduced by improper departure from these established procedures. We are not suggesting, as some courts have, that these two factors can be reduced to precise verbal formulae, supplanting the 'substantial factor' test. We do not think it is either possible or desirable to reduce the 'substantial factor' test to lower and more concrete terms in this way. We do believe, however, that in considering the question of causation in a case such as this, the finder of fact must at least take into account both the patient's chances of survival and the extent to which defendant has interfered with these chances.*" 566 F.2d at 757-58. (Emphasis supplied.)

The question of causation in cases involving negligent treatment of a potentially fatal condition (including failure to refer the patient to an appropriate specialist) is generally a matter to be determined by the finder of fact where the evidence has established the patient had an appreciable chance to survive if given proper treatment. In making the determination, the finder of fact should take into account both the patient's chances of survival if properly treated and the extent to which the patient's chances of survival have been reduced by the claimed negligence.

In the case before us one of plaintiff's experts testified the failure to obtain proper treatment increased Mr. Roberson's

chances of dying from the heart attack from nineteen percent mortality rate to twenty-five percent mortality rate (an increase of over thirty percent). The other expert testified the patient had a forty percent chance of surviving with treatment and zero percent chance without treatment. In addition to the failure to refer aspect of this case, we have the added factor of assuring the patient his heart was not causing his suffering and that his pain was to be expected from the muscular problem. We believe under the totality of the circumstances herein, the district court's entry of summary judgment in favor of defendant predicated upon insufficient evidence of causation was erroneous, and, in so doing, the district court usurped the function of the jury as the finder of fact. Whether the negligence of defendant was a substantial factor in Mr. Roberson's death is a matter for determination by a jury upon due consideration of all related factors.

We conclude that under the totality of the circumstances sufficient evidence was before the district court to have precluded summary judgment being granted on causation.

There are sound reasons of public policy involved in reaching this result. The reasoning of the district court herein (which is similar to the extreme position taken in *Cooper v. Sisters*, 27 Ohio St.2d 242), in essence, declares open season on critically ill or injured persons as care providers would be free of liability for even the grossest malpractice if the patient had only a fifty-fifty chance of surviving the disease or injury even with proper treatment. Under such rationale a segment of society often least able to exercise independent judgment would be at the mercy of those professionals on whom it must rely for life-saving health care.

The judgment is reversed and the case is remanded for trial.

HOLMES, J., not participating.

SCHROEDER, C.J., dissenting.